# CASES DETERMINED

## *August Term, 1890.*

BARNDT, Respondent, vs. FREDERICK, Appellant.

*October 16 — November 5, 1890.*

*(1) Action, tort or contract? Election: Practice. (2) Deceit: Incredible statements. (3) Evidence: Assuming truth of previous testimony. (4–6) Instructions to jury: Credibility of witnesses: Inference of fraud.*

1. A complaint contained all the averments essential to the statement of a cause of action *ex delicto* for fraudulent representations and also of a cause of action *ex contractu* to recover the purchase money paid upon a sale induced by such representations. The defendant answered fully both causes of action, but early in the trial asked the court to determine the nature of the action, and it was held to be one in tort and was tried on that theory without objection by the plaintiff. *Held,* that this was equivalent to an election by the plaintiff, and the allegations peculiar to an action on contract may be treated as surplusage.

2. A representation that a silver mining company had $1,500,000 worth of ore on the surface ready for crushing is *held* not so extravagant as to justify the court in holding, as a matter of law, that a purchaser of the stock of the company could not have relied upon it as being true.

3. The purchaser of mining stock having testified that it was worthless, the question " When did you first learn the truth in regard to this mine? " was not objectionable on the ground that it assumed the truth of the previous testimony.

4. After instructing the jury, as requested, in regard to evidence of conversations had years before the trial, that " human memory is so imperfect and frail that testimony of that kind should be scrutinized

with some or more care," the court added that this rule of law "applies more particularly to a casual conversation, and loses much of its force when applied to an important vital conversation in regard to a transaction." *Held*, that this instruction, taken in connection with a full charge as to judging of the credibility of witnesses, was not erroneous.

5. An instruction to the effect that fraud is never to be presumed without proof of it, but that it may be inferred from circumstances proved on the trial if those circumstances are sufficient to warrant the inference, is *held* not erroneous.

6. Where full and accurate instructions had been given to enable the jury to judge correctly the weight of the testimony, it was not an abuse of discretion to refuse a special instruction based upon an isolated portion of the testimony which was claimed to show an inconsistency between the statements of a party and his previous conduct.

APPEAL from the Circuit Court for *Washington* County.

It is alleged in the complaint that on October 15, 1883, the defendant sold and delivered to the plaintiff, at the county of Waukesha in this state (in which county plaintiff resides), 100 shares of stock in the Arizona Peerless Silver Mining Company, a corporation, etc., for $3,000, which sum the plaintiff then paid defendant therefor. The complaint then proceeds as follows:

" That, at the time of the sale and delivery aforesaid, said defendant falsely and fraudulently represented to the plaintiff that said company was then actually and actively engaged in the business of mining silver in the territory of Arizona, and was then the owner of a large quantity of mining property in said territory; that said corporation had, for a long time prior to said date, been actually and actively engaged in said mining business, and then actually had and owned a quantity of silver ore of the actual value of one and one-half millions of dollars, already excavated and upon the surface of the ground at its mines in said territory of Arizona, and ready for shipment; and that the market value of said stock was then thirty dollars per share."

It is further alleged therein that such representations were made at and before the sale and delivery of the stock, and were so made by the defendant, who well knew that each of them was false, for the purpose of fraudulently inducing the plaintiff to purchase the stock, and the plaintiff believed and relied upon them and was thereby induced to purchase the stock and pay therefor the said consideration, and that the stock never had any value, and was worthless. The remainder of the complaint is as follows:

" That the defendant never learned that said representations were false and fraudulent as aforesaid, until on or about the 1st day of December, 1887, and that thereupon, and on the 30th day of December, 1887, he offered to return said stock to the defendant, who then and there refused to accept the same, and the plaintiff avers that he has ever since been and is now ready and willing to return said stock to the defendant; that, by reason of the premises aforesaid, the plaintiff has been damaged in the sum of $3,000 and interest thereon from the 5th day of October, 1883. Wherefore this plaintiff demands judgment against said defendant for said sum of $3,000 and interest thereon from the 5th day of October, 1883, besides the costs of this action."

It is alleged in defendant's answer that he sold the stock in question to the plaintiff, as agent for said Peerless Mining Company and for certain individuals; that he had never been in Arizona and had no personal knowledge of the location, condition, or capacity of the Peerless mine; and that whatever statements he made to plaintiff concerning the same were made upon information received from others, which he deemed reliable, and he believed such statements were true when he made them. It is also alleged that at the time and before he so purchased the stock the plaintiff well knew the above facts. The answer then proceeds as follows:

" That this defendant, as such agent and upon such infor-

Barndt vs. Frederick.

mation so received at and before the making the sale of such stock, did tell the plaintiff that he had seen and talked with a Mr. Campbell, then acting as engineer and superintendent of the mine of the said Arizona Peerless Silver Mining Company, who professed to have, and whom defendant verily believed and still believes had, full knowledge of the condition and value of the mine, and whom defendant then believed and still believes stated the same truthfully, and that Mr. Campbell informed him the company were engaged in opening and operating the mine, and that 'Gunsight,' within a few hundred feet of the Peerless, owned by said company first above mentioned, had a large quantity of silver ore, excavated and in sight, of the value of one and a half millions, and that the lodes or veins being worked by such last-named company ran, or appeared to run, across the lands of the Peerless, whose stock he was offering for sale; all of which statements this defendant then and still believes to have been and to be true. And the defendant expressly denies that he made the representations stated in the complaint, or any false or fraudulent statements to his knowledge, but on the contrary states that the foregoing statements in his answer, by him set forth as the statements made by him in making the sale of said stock, and none other except perhaps kindred statements, were the statements made by him to the plaintiff to effect a sale of said stock. But he expressly avers that every statement made by him was upon information and belief, and to the said plaintiff known to be so at the time of the making of each and every one of them, and that the said defendant, at the time of such representation made on information, believed said information to be true."

It is further alleged in the answer that the defendant paid over the money received from plaintiff for such stock, less his commissions, to his principals, and that plaintiff made no complaint until December, 1887, when he offered to re-

turn the stock and take back his money; but the defendant declined the offer and refused to recognize the transaction as an individual one on his part or to purchase the stock or refund what plaintiff had paid for it.

Except as thus alleged in the answer, and except the allegations in the complaint of the organization of the Peerless Mining Company and the residence of the plaintiff, there is a general denial in the answer.

Further statement of the case, in connection with the rulings of the court on the trial, will be found in the opinion. The jury found for the plaintiff, and assessed his damages at the sum claimed in the complaint. Motions on behalf of defendant for a nonsuit and for a new trial were denied, and judgment for the plaintiff entered pursuant to the verdict. The defendant appeals from the judgment.

*Edward S. Bragg*, for the appellant.

For the respondent there were briefs by *Barney v. Kuechenmeister*, and oral argument by *S. S. Barney*.

LYON, J. I. On the trial of the cause, counsel for defendant claimed that the action, as characterized by the complaint, is to recover the consideration paid for the mining stock, on a rescission of the contract of purchase because of the alleged false representations made by the defendant which the plaintiff believed to be true and on the faith of which he made the purchase. Such also is his contention in the argument here. On the other hand, counsel for plaintiff maintained on the trial, as he does in this court, that the action is to recover damages for the alleged fraud and deceit of the defendant in the sale of the stock. If the first position is correct the action is based upon the implied promise of the defendant to refund the consideration paid for the stock by the plaintiff, in case such representations should prove to be false and the plaintiff should elect to rescind the contract and return, or offer to return, the stock.

In such case, it is an action *ex contractu*. If the other position is the correct one, it is an action *ex delicto*. Before the plaintiff can recover on the implied *assumpsit* he must show that the defendant made representations of fact materially affecting the value of the stock; that the plaintiff relied upon such representations and purchased the stock on the faith of them, believing them to be true; that they were false; and that, within a reasonable time after discovering they were false, the plaintiff rescinded the contract of purchase by returning or offering to return the stock to the defendant. It need not be averred or proved that the defendant knew his representations were false. His legal liability remains although he believed and had good reason to believe his representations true. It must also appear either that the defendant was the owner of the stock, or, if he was not the owner but was acting as agent of the owner in making the sale, that he failed to disclose such agency to the plaintiff, but dealt with him as though he (the defendant) was the owner. If such agency existed and the principal was disclosed to plaintiff at the time of the sale, the action *ex contractu* must be brought against the principal, and the agent is not liable, especially after he has (as in this case) paid over the proceeds of the sale to his principal.

If the action is to recover damages for the alleged fraud and deceit, the plaintiff must, as in the other form of action, show the representations, their materiality, his reliance upon the truth of them in making the purchase, and that they were false; but he must also aver and prove that the defendant knew they were false, or had no good reason to believe they were true, when he made them. No offer to return the stock need be averred or proved, and the facts that the defendant acted as agent for others in selling the stock, and disclosed his principals to the plaintiff at the time of the sale, will not relieve the defendant from liability for his fraud. Neither will any delay in bringing such ac-

tion *ex delicto* necessarily defeat it, unless some statute of limitation has run against the cause of action. The rules above stated are quite elementary, and neither of the learned counsel question or controvert them.

The defendant proved on the trial that he sold the stock in question as the agent of the mining company, and the proofs are quite satisfactory that the plaintiff had knowledge of that fact when he made the purchase. If he had such notice (and we do not doubt he had) the plaintiff cannot recover against the defendant on the implied *assumpsit;* hence, if this is an action *ex contractu,* it cannot be maintained and the judgment for the plaintiff must necessarily be reversed.

On the other hand, the testimony given on the trial tends to prove that the defendant made the representations charged in the complaint; that the plaintiff believed them true, relied upon them, and purchased the stock on the faith of them; that they were false in material particulars; and that the stock, when plaintiff purchased it, was of little or no intrinsic value. It is not denied that the Peerless Mining Company never excavated ore of any considerable value from its mine, and it is not claimed that defendant had any reason to believe, or that he was ever informed, it had $1,500,000 of ore on the "dump," as it is called, or any other considerable quantity. If he made the representation to the plaintiff in that behalf as charged, it was certainly fraudulent. Although the defendant denies that he made any such representation in regard to the Peerless mine, yet there is sufficient testimony tending to show that he did to support a verdict for the plaintiff. There is also testimony which would justify findings that the defendant had no good reason to believe that other material representations so made by him were true, and that they were not true. The testimony therefore tends to prove every fact essential to a recovery in the action, if the cause of action is the fraud and deceit of the defendant.

Barndt vs. Frederick.

The foregoing observations show that the question whether the action is upon contract or for tort is important if not controlling on this appeal. It will now be considered. The same question has frequently arisen in this court in cases founded upon transactions which were at the same time a breach of duty and a breach of contract. *Lane v. Cameron*, 38 Wis. 603; *Smith v. C., M. & St. P. R. Co.* 49 Wis. 443; *Graham v. C., M. & St. P. R. Co.* 49 Wis. 532; *S. C.* 53 Wis. 473; *Fifield v. Sweeney*, 62 Wis. 204; *Western Ass. Co. v. Towle*, 65 Wis. 247; *Potter v. Van Norman*, 73 Wis. 339; *Whereatt v. Ellis*, 58 Wis. 625. In some of these cases the actions were held to be on the contract, although the complaint in each contained averments peculiar to an action in tort for the breach of duty; while in others the actions were held to be for the tort, although the complaint in each contained averments peculiar to an action for the breach of contract. The general rule to be deduced from these cases is thus stated by Mr. Justice TAYLOR in *Western Ass. Co. v. Towle:* "Each complaint must be judged of upon the exact facts stated in it, in order to determine whether it be an action in tort or on contract, and in determining that question the evident intention of the party in stating his facts must have effect in determining the question, when the facts alleged might sustain a cause of action either in tort or on contract." 65 Wis. 254. It must be conceded that none of these cases are decisive of the question as it arises in the present case. We must determine it, therefore, mainly upon the special circumstances of the case, having due regard to the rule thus laid down.

The complaint contains all averments essential to a cause of action for the tort and also to a cause of action on the implied *assumpsit* to recover back the consideration paid for the stock, unless it is essential to the latter cause of action to aver a demand of the consideration. This is not averred. But we are inclined to think that such demand is implied in the offer to return the stock, and it is not a nec-

essary averment in either form of action. The point, however, is not here decided.

Regarding the complaint as stating a good cause of action for the alleged fraud and deceit and also to recover back the consideration paid for the stock, the defendant might have moved the court, before the trial, to compel the plaintiff to elect upon which cause of action he would rely, and to strike out the allegations peculiar to the other cause of action, and the motion should have been granted. Or he might have moved that the complaint be made more definite and certain, and the court would have required the plaintiff to make the same election and amendment. Perhaps, also, the defendant might have demurred for improper joinder of causes of action in the complaint. It may be that he could not demur until he had obtained an order of the court compelling the plaintiff to separate his two causes of action which were blended together in one count. Had a motion for such an order been submitted, the court should have granted it and required the plaintiff to strike from the complaint the averments peculiar to one of the causes of action. Or, had the two causes of action been separated, a demurrer for misjoinder of causes of action would have been sustained, which would have led to the same result. The defendant failed to resort to either procedure indicated, but fully answered both causes of action and went to trial on the issues thus made by the pleadings.

Early in the trial, however, and before any testimony was introduced, counsel for defendant requested the court to determine whether the action was to recover damages for the alleged deceit or to recover the consideration paid for the stock on the rescission of the contract for the sale thereof. The court thereupon determined that the action was for the deceit, and in the subsequent rulings in the case so treated it. Plaintiff was content with such determination, and conducted the trial upon the same theory.

Barndt vs. Frederick.

This was equivalent to an election by plaintiff to rely upon the cause of action in tort stated in the complaint, and to abandon the other cause of action therein stated. Thus was accomplished on the trial what would have been, had one of the proceedings above suggested been resorted to before trial. We discover no error in this. We conclude the action was properly tried as an action to recover damages for the deceit, and that the complaint may be treated as amended by striking out the allegations peculiar to the other form of action, or the same may be rejected as surplusage.

II. The testimony is voluminous and on some material propositions of fact is in conflict. It has been carefully examined, as has also the very acute and searching analysis of it submitted by counsel for defendant. Were we sitting as jurors in the case we might, in the light of the analysis and argument, hesitate to find the facts as the jury found them. But we can only determine whether there is testimony in the case which, assuming it to be true, is sufficient to support the verdict. We have already determined this question in the affirmative.

The action being for the fraud, and there being sufficient evidence to support the verdict, the judgment entered pursuant thereto should not be disturbed unless material error intervened on the trial. Before considering in detail the errors assigned for a reversal of the judgment, it may be observed that some of them are based on the hypothesis that the action is *ex contractu*, and cease to be material since it is held to be an action *ex delicto*. Of this class is the exception to the refusal of the court to grant a nonsuit on the ground of plaintiff's silence after he ascertained the character of the mine, and his failure for so long a time to take any steps in the matter, which it is claimed is fatal to his right to impeach the contract under which he purchased the stock for fraud. He is not seeking to impeach the contract,

as the parties aggrieved were in *Grannis v. Hooker*, 31 Wis. 474, and *Woodford v. Marshall*, 72 Wis. 132, cited by counsel. Of the same character also are the exceptions to the remarks made by the judge to the jury, to the effect that it was not denied the defendant sold the stock to the plaintiff and received payment therefor; and that it made no difference whether the alleged false representations were made by the defendant as agent or owner. No further mention need be made of exceptions and alleged errors of the same class.

We are now to consider the material rulings of the court upon which errors are assigned, and which are relied upon as grounds for a reversal of the judgment.

1. One of the grounds urged for a nonsuit was that the alleged false representations, especially the representation that the Peerless Mining Company had $1,500,000 worth of ore on the dump or surface, ready for crushing, was too absurd and incredible for any sane man to believe, and hence the plaintiff could not have relied upon its truth when he purchased the stock. It is difficult to draw a line beyond which human credulity cannot go, especially in speculations in mining stocks. If the representations were so extravagant that sensible, cautious people would not have believed them, that is a proper consideration for the jury in determining whether the plaintiff believed and relied upon them; but it does not preclude a finding that plaintiff did so, nor relieve the defendant from liability for his fraud if he committed fraud. It is as much an actionable fraud wilfully to deceive a credulous person with an improbable falsehood as it is to deceive a cautious, sagacious person with a plausible one. The law draws no line between the two falsehoods. It only asks, in either case, Was the lie spoken with intent to deceive and defraud, and was the false statement believed and money paid on the faith that it was true? These questions are for the jury. The false representations in this

Barndt vs. Frederick.

case were not so extravagant as to justify the court in hold-
ing, as matter of law, that the plaintiff could not have be-
lieved and relied upon them as true.  The motion for a
nonsuit called upon the court so to rule.  The refusal to do
so was not error.

2. The plaintiff testified in his own behalf that the stock
was then worthless.  This was not objected to.  Later, his
counsel put this question to him: "When did you first learn
the truth in regard to this mine?"  An objection to the
question was overruled, and he answered: "About two
years ago — I think it was in October — I found it was not
worth a cent."  It is now contended that the question was
objectionable in that it assumed the truth of the plaintiff's
previous testimony.  Suppose it does.  After the plaintiff
had testified positively to a fact, we see no valid reason
why his counsel may not formulate other questions on the
theory that his testimony is true, and put them to him.
But the question in the form it was put really assumed
nothing.  It merely called upon the plaintiff to tell when
he first learned of a fact to which he had already testified.

3. It is assigned for error that testimony of conversations
between the parties after the sale of the stock was errone-
ously admitted.  We are unable to find in the bill of excep-
tions any objection to its admission, or any ruling by the
court upon the question of its admissibility.  We suppose,
however, that in so far as the conversations bore upon the
issues in the case the testimony was admissible.

4. The defendant asked an instruction as to the duty of
the jury closely to scan testimony of conversations repeated
after the lapse of years.  The court gave the substance of
the proposed instruction as follows: "I have been requested
also to charge you in regard to conversations made after
the lapse of years; to charge you that human memory is so
imperfect and frail that testimony of that kind should be
scrutinized with some or more care.  This is the rule of the

law." To this, however, the court added: "It applies, however, more particularly to a casual conversation, and loses much of its force when applied to an important vital conversation in regard to a transaction." It is claimed that such additional remark is erroneous. The fair construction of the charge is that if a witness testifies to a conversation which was casual as to him — that is to say, in which he had no interest, and perhaps took no part — his testimony should be carefully scrutinized, especially if considerable time has intervened between the conversation and the time he gives testimony of it. But if the conversation was vital and important to some transaction in which the witness was engaged (as, for example, the making of an important contract), the rule loses much of its force. Had the learned judge given a reason for the distinction, it doubtless would have been that in the latter case the witness would naturally remember the conversation with much greater accuracy because the result of it was important to him, perhaps imposing upon him new or increased obligations to others, than would the mere casual talker or listener who had no interest whatever in the subject matter of the conversation. In our opinion, this reason for the distinction is a sound one, for it accords with what we all know of the human memory and the essential conditions of accuracy in its exercise. The court supplemented this instruction in another part of the charge by saying to the jury: "You are the judges of the credibility of these witnesses. They contradict one another in several important particulars. You must determine which of them have told the truth in regard to these disputed questions, and, to aid you in that, you see them upon the stand. You can judge of their manner in which they testify, whether they appear to be candid and truthful or not, whether the story they tell is reasonable and natural or not, whether they have any interest in the result of this case. You are also, then, to

apply your own knowledge of men and things, your own observations and experience in the affairs of life; apply them to the testimony of these witnesses, and determine upon which side the truth of the matter is." In this portion of the charge the court supplied any defect or omission in the portion objected to, by giving the jury a better and safer and more comprehensive rule by which they might sift the truth out of a mass of conflicting testimony. Even were the challenged instruction somewhat objectionable, we should be inclined to hold that it could not, when considered with the rest of the charge, possibly have misled the jury.

5. The defendant further asked the court to instruct the jury that fraud is never to be presumed, but must be proved by a preponderance of the evidence as in the case of any other fact. The court gave the instruction substantially as asked, and then added the following remarks: "It is not presumed; but it may be, however, inferred from all the circumstances and surroundings of the case as developed by the evidence. . . . In this case, while you are not to presume it, you may infer, if you find the evidence will warrant you in that presumption, the fraudulent character of this transaction." These quoted portions of the charge are claimed to be erroneous in that they contradict the instruction given at the request of defendant, which is but the statement of an axiom in the law. The argument is that, after having charged that fraud is never to be *presumed*, the court proceeded to charge that fraud may be *inferred*. But such is not a fair statement of either branch of the instruction. The court charged, in substance, that fraud is not to be presumed without proof of it, but it may be inferred from circumstances proved on the trial if those circumstances are sufficient to warrant the inference. In other words, the court charged that the fact of fraud may be proved by circumstantial evidence, if sufficiently strong,

just as any other fact may be proved in a court of justice. This is doubtless good law.

6. The Peerless Mining Company issued a circular to its stockholders in April, 1884, which the plaintiff received soon after it was issued, and carefully read. It purports to give a statement of the operations of the company to that time, its plans, prospects, etc. Counsel for defendant claims that this circular negatives the truth of many of the representations which it is alleged the defendant made to the plaintiff to induce him to purchase the stock, and hence that the plaintiff knew such representations were false long before he brought this action or asserted the deceit; so counsel proposed an instruction specially submitting to the jury the question whether, in view of those facts, if the fraudulent statements the plaintiff claims were made to him were in fact made, he would have so remained quiet, putting forth no claim of alleged wrong done him in the particulars now alleged, with an instruction that if present statements of plaintiff are unreasonable and not consistent with his conduct the jury should give little weight to such statements. The court refused to give the instruction. The trial court has some discretion as to how far it will give special instructions based on isolated portions of the testimony. Here a single item of evidence is selected, the inference from which is claimed to be that the plaintiff is asserting a claim in this action inconsistent with his former conduct. The counsel maintains that it should have been specially submitted to the jury whether the inference claimed is the correct one, and, if correct, that the jury should have been instructed that plaintiff's testimony is entitled to but little weight. In view of the full and accurate instructions given to enable the jury to judge correctly the weight of the testimony, we do not think the court erred in refusing to give this particular instruction, even though it did not encroach upon the prerogative of the jury to de-

termine the weight of testimony. We have, however, looked into the circular, and we do not think it contains any clear statements showing that the more material of the alleged representations were false.

In conclusion, it only remains to be said that in his charge to the jury the learned circuit judge gave due heed to the very salutary caution of Lord Justice TURNER, that in its anxiety to correct fraud the court should be careful that " it does not enable persons who have joined with others in speculation to convert their speculations into certainties at the expense of those with whom they have joined." *Jennings v. Broughton,* 5 De Gex, M. & G. 140. Upon the whole case, we conclude that no error has intervened for which the judgment should be disturbed.

*By the Court.*— Judgment affirmed.