KOESTER, Administrator, Respondent, vs. CHICAGO & NORTH-
WESTERN RAILWAY COMPANY, Appellant.

*March 22 — April 6, 1900.*

*Railroads: Collision at street crossing: Contributory negligence: Fail-
ure to look: Diversion of attention: Court and jury.*

1. Plaintiff's intestate was struck and killed at a street crossing by a
   passenger train running at an unlawful speed without the statu-
   tory signals being given. Upon the evidence — showing, among
   other things, that the deceased was driving rapidly and as he
   neared the crossing, with which he was familiar, was urging his
   horse forward; that although his view down the track was consid-
   erably obstructed as he approached, yet from certain points the
   train must have been in plain sight had he looked; and that as he
   reached the' right of way, fifty feet from the point of collision, a
   mere glance would have disclosed to him his peril — it is *held*, as
   matter of law, that he was guilty of contributory negligence either
   in failing to look or in attempting to cross in front of the train
   with knowledge of its approach.

2. An engine and caboose which, shortly before the accident, the de-
   ceased might have seen starting from the station in the direction
   whence the train afterwards came, and which had passed down a
   side-track over the crossing in question and stopped in plain view
   for a considerable distance as he approached the tracks, is *held* not
   to have constituted such a diversion of his attention or such an
   assurance that no train was coming from that direction as would
   make the question of his negligence one for the jury.

APPEAL from a judgment of the circuit court for Wash-
ington county: JAMES J. DICK, Circuit Judge. *Reversed.*

The defendant's railway runs through the city of West Bend
in a generally northerly and southerly direction. The city
is mainly some little distance to the west of the track, while
to the east of it, in the vicinity involved, are some lumber
yards and sheds and an elevator. The railroad is crossed
by Water street at a point about 600 feet south of the depot
and about 850 feet north of the south city limits. The
course of the railroad is level, and at or above the surface,

Koester vs. Chicago & Northwestern R. Co.

for nearly half a mile south of the depot, so that, but for the obstructions hereafter to be mentioned, a train thereon would be obvious.   Eleven hundred and fifty feet south of Water street the track crosses a bridge.   The plaintiff's intestate left an elevator situated east of the railroad and about 400 feet north of Water street, drove in a buggy rapidly south on a traveled way to Water street, and turned thereon at a point about ninety feet east of defendant's main track, and traveled westward along Water street, crossing two switch tracks and then the main track.   When the hind wheels of his buggy were on the main track he was struck by a regular passenger train traveling, as the jury found, about twenty-three miles per hour, and was killed. Deceased drove rapidly, increasing his speed as he approached the crossing, where, as the jury found, he was traveling eight miles per hour, whereas shortly before his rate is fixed by them at seven miles per hour.   He made no pause from the elevator to the time of his collision.

On the south side of Water street, commencing at the railroad right of way about fifty feet east of the main track, is a lumber shed, which runs southwesterly parallel to a switch track.   Then intervenes a space of about twenty-six feet, and a building standing practically due north and south, the north end of which, on Water street, is occupied as an office and the rear portion as a lumber shed.   East of this are lumber yards and buildings, with intervals between them.   The testimony shows that for some considerable distance after leaving the elevator the track was visible from a point some 700 or 800 feet south of Water street to nearly half a mile south of the depot.   The place of turning westward on Water street is approximately opposite the west line of the office building above mentioned, between which and the lumber shed direct lines of vision would give a view of the track at a point about 280 feet south of the crossing and thence on southward.   That space was, how-

ever, incumbered by certain piles of posts, the highest of which was estimated at about eight feet, over which the deceased could easily have seen by rising in his buggy. A photograph, taken at a time when the highest of these piles had been elevated somewhat, shows that, at an elevation of three and one-half or four feet from the ground, consider-able portions of the track were visible around the highest pile, which did not occupy the entire space. After passing this space and reaching a point opposite the northwest cor-ner of the lumber shed, approximately fifty feet east of the place of injury, the view of the track southward is unob-structed from the crossing to a point about 300 feet south thereof, which distance, however, of course enlarges rapidly as the traveler advances and his line of vision forms an acute angle with the line of the lumber shed. At the time of the injury, however, upon a side track substantially par-allel with the main track, and distant about five feet east therefrom, there stood an engine and caboose, about ninety feet in length, the north end of which was about twenty or thirty feet south of the crossing on Water street. This would have obscured the track from the last-mentioned point of observation for a space of about 160 feet south from the crossing, leaving only about 140 feet of the main track mo-mentarily visible upon reaching the west line of the lumber shed. The train was about 340 feet in length.

As to the conduct of the deceased in the way of observation or effort to observe, there is no evidence, except that he did not stop to look or listen. He was a farmer, living about three miles from the city for many years, during which the train in question had been due at substantially the same time. He was in the habit of frequently passing this cross-ing on Water street, as shown by the testimony of the occu-pant of the lumber office in question. His visits to the elevator were every week or two. The testimony, with the exception of some undisputed evidence relating to measure-

ments and photographs, was entirely from plaintiff's witnesses.

At the close of the trial direction of a verdict was requested by defendant and refused, and a special verdict was taken which, so far as material on this appeal, was as follows: "(2) At what rate of speed was defendant's train moving at the time of collision? A. Twenty-three miles per hour. (3) At what rate of speed was Henry Kruse, deceased, driving as he entered upon defendant's right of way? A. Seven miles per hour. (4) At what rate of speed was Henry Kruse, deceased, driving at the time of the collision which resulted in his death? A. Eight miles per hour. (5) As Henry Kruse, deceased, was approaching the crossing of defendant, could he have heard the noise of the approaching train if he had listened, by the exercise of ordinary care? A. No. (6) Could Henry Kruse, deceased, have seen the approaching train if he had stopped as he entered upon defendant's right of way, and listened? A. No. (7) Did Henry Kruse, deceased, stop and look out for the approaching train of defendant? A. No. (10) Was Henry Kruse, deceased, guilty of a slight want of ordinary care and prudence which caused or contributed directly to his death. A. No."

Defendant moved the court to set aside the answers to the fifth, sixth, and tenth questions, and for judgment for the defendant, on the ground that they were adverse to the undisputed evidence, and also moved for a new trial on the same with other grounds. Both motions being overruled, judgment was entered for the plaintiff, from which this appeal is brought.

For the appellant there was a brief by *Fish, Cary, Upham & Black*, attorneys, and *Edward M. Hyzer*, of counsel, and oral argument by *John T. Fish*.

*C. H. Hamilton*, for the respondent, to the point that in cases where the circumstances were less perplexing than in

the case at bar this court has repeatedly held that the question of contributory negligence was for the jury, cited *Roberts v. C. & N. W. R. Co.* 35 Wis. 679; *Valin v. M. & N. R. Co.* 82 Wis. 1; *Heath v. Stewart,* 90 Wis. 418; *Butler v. M. & St. P. R. Co.* 28 Wis. 487; *Ferguson v. W. C. R. Co.* 63 Wis. 145; *Regan v. C., M. & St. P. R. Co.* 85 Wis. 43; *Kelleher v. M. & N. R. Co.* 80 Wis. 584; *Winchell v. Abbot,* 77 Wis. 371; *Siegel v. M. & N. R. Co.* 79 Wis. 404; *Piper v. C., M. & St. P. R. Co.* 77 Wis. 247; *Duame v. C. & N. W. R. Co.* 72 Wis. 523; *Bower v. C., M. & St. P. R. Co.* 61 Wis. 457.

DODGE, J. On this appeal findings that defendant's train was running at an unlawful rate of speed, that the statutory crossing signals were not given, and that defendant's servants were guilty of negligence proximately causing the accident, are not seriously assailed. The assignments of error substantially resolve themselves into the contention that plaintiff's own evidence shows conclusively that the deceased was guilty of contributory negligence, in that he drove onto the crossing without proper or any efforts to inform himself whether a train was approaching, or with knowledge of its approach. The rule of law that he who intends to cross a railroad track is not free from negligence unless he make vigilant use of all his faculties to ascertain the approach of a train, has been repeated by this court under so many variant circumstances that its statement again seems hardly necessary. If, during any part of his course, the track is obscured from his vision, the duty is all the more imperative to avail himself of every possible unobscured opportunity, and, if partial obstruction to vision or hearing exist, to make effort to overcome such obstruction. Omission of any reasonable effort likely to be effective is negligence as matter of law, not merely is it evidence of negligence. Further, it is held that if the approaching train was visible the traveler will be pre-

Koester vs. Chicago & Northwestern R. Co.

sumed to have seen it, and his denial will not suffice to over-
come such presumption. The cases in which these rules have
been declared and applied have become so numerous as to
make their repeated citation burdensome. The more impor-
tant are mentioned in *Nelson v. D., S. S. & A. R. Co.* 88 Wis.
392; *Schneider v. C., M. & St. P. R. Co.* 99 Wis. 378; *Caw-
ley v. La Crosse City R. Co.* 101 Wis. 145; and *Vant v. C. &
N. W. R. Co.* 101 Wis. 363.   To the rules above outlined it
may be added that he who sees an approaching train, in
such proximity as to make haste necessary, cannot, consist-
ently with due care, needlessly engage in a race with death
by attempting to pass the crossing ahead of it.   Such con-
duct is characterized as recklessness and gross negligence.
*Langhoff v. M. & P. du C. R. Co.* 23 Wis. 43; *Haetsch v. C.
& N. W. R. Co.* 87 Wis. 304, 310; *Groesbeck v. C., M. & St.
P. R. Co.* 93 Wis. 505, 513.

In the case before us the deceased drove rapidly, and with-
out pause, from a point 500 feet away to collision at the cross-
ing.   During the early part of his progress the onrushing
peril must have been plain before his eyes.   At another
place, ninety feet from danger, he had opportunity to inform
himself by the very slight exertion of standing in his buggy
to look over the posts piled between the buildings.   This
we know he did not do, but either heedlessly or knowingly
hurried forward into a space whence he could not see, and
thence onward to the crossing.   Thus, independently of his
conduct upon reaching the right of way, the deceased was
clearly guilty of negligence at two points in his progress
before reaching it, first in the early part of it, near the ele-
vator, for there he could have seen the train had he ob-
served what was before his eyes.   The only witness on the
subject testifies: " He would have a very good view of the
track for some distance from the elevators,— of the track
south of the lumber yards and near what is known as the
bridge."   Respondent's counsel asserts that this part of the

track visible was only that more than 900 feet south of the crossing. Let that be conceded, still the train was in full view; for at the time deceased left the elevator, about forty-eight seconds before the collision, the train must have been about 1,600 feet south of the crossing, and coming toward deceased, in plain sight for some twenty seconds, while he traveled half of the 400 feet between the elevator and Water street.

He either did or did not see that train. If he did, the fact that he was urging his horse forward as he passed the lumber office and thence to the crossing is plenary evidence that he was attempting to reach and pass the crossing ahead of it; conduct which, as we have said, can be characterized only as gross negligence,— a wholly needless exposure of himself to a known peril. The balancing of the chances upon the relative speed of the train and his horse, and the assumption of so great a hazard when he might adopt the alternative slight inconvenience of waiting one or two minutes for the train to pass, is not permitted to one who would hold another liable for the result.

If, on the other hand, he did not see the train, his negligence was .only less industrious and wilful. His failure to see must have been due to the most complete omission of any effort, and this, too, with the knowledge that he was about to pass into a space where his view would be obstructed; for he was entirely familiar with the crossing and its surroundings. No ordinarily careful man, intending to pass this crossing, would have omitted this opportunity to inform himself whether a train then about due was within half a mile. Again, as he turned onto Water street there was, as already stated, opportunity to ascertain whether there was an approaching train by rising in his buggy and looking between the office and the lumber shed. This was equally the part of ordinary caution, whether he had seen the train while leaving the elevator or had neglected to ob-

serve; for he was about to enter another space from which his view would be obstructed until he reached the tracks. Had he looked he would have seen the train, for his lines of vision would have extended over all the track from the bridge to a point within 300 feet of the crossing, as established either by geometrical computation or by application of a straightedge to the scale map in evidence. The engine must then have been about nine seconds, or 306 feet, from the crossing, with the train reaching 340 feet behind it southward. Had the train not been within his lines of vision, he would have been safe: it must have been either too near or too distant for collision.

Passing from the acts of negligence above discussed, the conduct of the deceased, as disclosed by the evidence, after he reached the railroad right of way directly north of the northwest corner of the lumber shed above described cannot be made consistent with due care. As he reached this point his view of the main track was obscured for only a space of 160 feet by the switch engine and tender standing on the side track. Between that engine and the south end of the lumber shed was a space of some fifteen or twenty feet, which gave him a view, continually enlarging as he progressed, of the track southward, and within this field of vision must have been the train at this moment. According to the distances and speed as found by the jury, the engine was approximately 175 feet from the crossing at the time the deceased passed the corner of the lumber shed, and behind it for 354 feet stretched the train. Whether these figures be perfectly accurate or not, they suffice to make it certain that some part of the train was visible only 200 or 300 feet away, and that the most casual glance to his left, as he entered upon the right of way, fifty feet from the crossing, or immediately thereafter, would have disclosed to him his peril. That he did not give even this casual glance seems an irresistible conclusion, for it is inconceivable that he would

have proceeded had he seen the train. Not having informed himself at either of the earlier opportunities whether or not the train then due was at hand, certainly it was the part of ordinary caution to have availed himself of this opportunity, the last before he placed himself irrevocably in peril. True, the jury finds that had he looked at this point he could not have seen, but such a finding cannot be sustained for a moment, as against the absolute physical demonstration furnished either by geometric calculation or the application of direct lines of vision to the map offered in evidence. Long before the deceased reached this point he necessarily knew that the switch engine and caboose had moved onto this side track and would obscure a part of the view, and the duty arose to exercise all the more vigilance to avail himself of the so limited space for observation. The evidence refutes such conduct; for, instead of pausing to secure the full benefit of the glimpse through this narrow space, he continued to urge his horse more rapidly forward. The conduct at this point, as well as while passing the space between the office and the lumber shed, marked, as it was, by increasing haste and forbearance to observe, seems inconsistent with any theory save that when leaving the elevator he had seen the approaching train, made up his mind to the effort to cross ahead of it, and was persisting in that effort, without seeking further to inform himself of the safety or peril. Whether that conclusion be the correct one or not, however, the neglect to look at these places was omission of that vigilance which the law demanded of the deceased, under all the circumstances. On no theory of his conduct was it consistent with due care. Not to look was negligence; to proceed after looking and seeing what he must have seen was likewise negligence.

The respondent lays much stress upon the presence of the engine and caboose upon the adjoining side track as a diversion of the attention of the deceased, and also as an assur-

ance to him, from the fact of its movement southward, that no train was approaching from that direction. He predicates both of these effects upon an erroneously stated situation. The picture which he draws is that of the passing engine and car in front of the deceased as he was going westward toward the track. This is not in accordance with the evidence. Mr. Weil, the only witness who saw that engine and caboose in motion, testifies that it passed over the crossing about a minute before the collision. This was before the deceased left the elevator; for, at the rate he traveled, he required but about forty-eight seconds from the elevator to the crossing. This engine, therefore, had started while he was still at the elevator, whence he could easily observe it, and had passed down the side track and over the crossing, and must have come to its stop, twenty or thirty feet south of the crossing, some seconds before he turned westward onto Water street, and the northerly end of it was plain before his eyes for a considerable distance.

It would be waste of space to enter upon comparison with various decided cases, where confusion, misconduct of horses, absence of customary flagman or gates, or other circumstances have been held sufficient to raise a question of fact as to a plaintiff's negligence. Under the general rules of law which are suggested above, each individual case must be decided substantially upon its own facts, and there is not enough similarity between the circumstances here presented and those of any of the decided cases to make analytical comparison beneficial. Suffice it to say that from the facts, which are substantially undisputed, nothing appears which could reasonably have forced his attention away from the ever-present and urgent duty to look out for this train known to be due, nor have served as an intimation or assurance to him that no train was approaching. Indeed, stoppage on the side track of the freight was rather the reverse in effect, and might well have suggested that the regular passenger train was at hand.

The conclusion of negligence arose irresistibly, and by operation of law, from plaintiff's own evidence as to the conduct of the deceased, and it was the duty of the trial court to have so decided upon defendant's motions for nonsuit, for direction of verdict, and for a new trial. Error was committed in the denial of each of those motions.

*By the Court.*— Judgment reversed, and cause remanded for new trial.