KAISER, Appellant, vs. NUMMERDOR, Respondent.

*December 14, 1903—January 12, 1904.*

*Sales: Deceit:. Fraudulent representations: Evidence: Special ver--
dict: Instructions to jury.*

1. In an action for deceit, based on fraudulent representation as
to the total footing of an inventory of a stock of goods sold to
plaintiff by defendant, the evidence, stated in the opinion, ex-
amined and *held* to support a negative answer to a question
in the special verdict: Did the plaintiff, under all the facts and
circumstances of the case, as an ordinarily prudent man, have
the right to rely upon such representations to be true?

2. In such case, the only artifice suggested was a change in the first
figures of the totals from "6" to "8," and it was in dispute
whether defendant made or knew of the change, and also
whether it was not such an obvious alteration of a previous:
figure as to at once attract plaintiff's attention and suggest in-
spection. *Held*, that it could not be said that there was no evi-
dence which, if believed by the jury, might have warranted a
negative answer.

3. It is ordinarily essential in one seeking relief from fraud,
whether by damages or rescission, to see that which is appar-
ent, if, knowing it, he could not have been deceived by defend-
ant's misrepresentations, and hence, in an action against one
who has wilfully deceived him, the question of plaintiff's dili-
gence is properly a question to be submitted to the jury.

4. It is not error to instruct the jury that the degree of diligence
essenial in the presence of actual fraudulent representation
(as where, in the purchase of a stock of goods, the footing of
the inventory is represented to be that shown by the change of
the first figure of the totals from "6" to "8"), is such as ordi-
narily careful and prudent persons exercise under like circum-
stances, where it appears that plaintiff was a man of excep-
tional shrewdness, alertness and experience in the buying and
dealing in stocks of goods.

5. It is the duty of a purchaser of goods upon the representations
of another, if he has full means of knowledge by the exercise
of ordinary attention to business, to at least look at what he
buys, so as to observe patent defects, if there are any such.

6. Plaintiff, in an action for deceit, was shown to be a man of at
least ordinary intelligence and acuteness, and to have had pres--
ent the means of discovery of the falsity of the representation

relied upon. The court instructed the jury that the plaintiff was required to exercise ordinary care and prudence in the matter at issue. *Held*, that while the use of the expression "ordinary attention" would have been better, in its relation to the facts in the case, the instruction cannot have misled the jury as to the law.

APPEAL from a judgment of the circuit court for Dane county: R. G. SIEBECKER, Circuit Judge. *Affirmed.*

Action for damages from deceit inducing plaintiff to purchase a stock of boots and shoes at an agreed value of $7,000. The jury found by special verdict that the defendant falsely represented to the plaintiff that such stock inventoried at the amount of $8,500 by the inventory made by one Klug, with the intent and object to induce plaintiff to rely upon it as true and to purchase; that the plaintiff understood and believed such to be the fact, and was thereby induced to buy the stock. The inventory in fact footed $6,531. The difference in value between the goods in fact and if they had been as represented was $1,846.15. But they also found, in answer to the fourth question, that "the plaintiff, under all of the facts and circumstances of the case, as an ordinarily prudent man, [did not] have the right to rely upon such a representation as true." The charge on this subject was as follows—excepted portion in parentheses:

"(In passing upon this question, you are to keep in mind that, in law, the plaintiff is required to exercise ordinary care and prudence in the matter at issue. He must exercise such care and prudence, and give such attention to the particulars of the transaction pending, as ordinarily careful and prudent persons exercise under like circumstances. Under this rule, he is not permitted to willfully disregard or negligently omit to avail himself of information at hand, and accessible to him, giving the true state of facts complained of as false and fraudulent.) As to the defendant, the seller, the law imposes the duty that he do not employ any art or practice any artifice to conceal or misrepresent the facts, or do any act to throw the plaintiff off his guard, or prevent him

from using any means at hand to give him the correct information pertaining to the alleged false representation."

The plaintiff moved to set aside the answer to question 4, and also moved for a new trial, which motions were overruled; and a motion for judgment for defendant on the verdict was granted, and judgment entered, from which the plaintiff appeals.

For the appellant there was a brief by *Bashford, Aylward & Spensley,* and oral argument by *R. M. Bashford*

*H. W. Chynoweth,* for the respondent.

DODGE, J. The first position assumed by appellant is that there was no evidence to support a negative answer to question 4 of the special verdict. The representation was that Klug's inventory showed a total value of $8,531. Upon reaching the store where the goods were, plaintiff—who, by the way, was quick at figures, familiar with inventories, and largely experienced in estimating and buying stocks—asked for that inventory; and it was delivered to him, and retained a considerable time, while he selected numerous illustrative items, and examined the particular goods represented thereby, with the aid of his shoe expert, in order to ascertain the basis of valuation adopted by Klug. This inventory consisted of twenty pages of detail items, each page footed separately, none exceeding three figures of dollars. On the last page these respective twenty footings were brought together in one column, and there footed to an original total of $6,531. All this in pencil. There is evidence that the "6" had been changed to "8" when plaintiff had the book, though the defendant denies that he ever changed it or knew of its change, and inferentially denies that it then was an "8." At the trial the first figure was "6," obviously written upon an erasure. The evidence thus shows that plaintiff had full and complete means of knowledge of the true total of the inventory at the expense of only the effort of adding up the column

of twenty items. He could have discovered that $8,500 was clearly incorrect and excessive by merely running his eye over the column of hundreds, as it appears did one Straus, with whom defendant negotiated. This would have shown but about $5,500, and would at once have suggested that the odd amounts less than $100 could not bring the total up to $8,500. The question, conceding the "8" was in fact there, whether the incorrectness of the total was so obvious that plaintiff ought to have observed it, was one open at least to an affirmative inference, and was properly for the jury. But counsel urges, and properly, that if defendant, by artifice, threw plaintiff off his guard, or diverted him from observing that which he had opportunity to observe, then the fourth question of the verdict must be answered in the affirmative. Upon this branch of the subject not only is the inference deducible from the facts doubtful, but the evidence itself is in some measure of confusion and conflict. The only artifice suggested is the change in the first figure of the total. Whether defendant made that change or knew of it is in dispute; also whether it was not so obviously an alteration of a previous figure as to at once attract plaintiff's attention and suggest inspection. Hence we cannot say that there was no evidence which, if believed by the jury, might have warranted them in a negative answer to the question submitted.

The next contention, broadly stated, is that the fourth question to the jury and its answer have nothing to do with defendant's liability; that diligence in a defrauded person is in no wise essential to his recovery against one who willfully deceives him. In other words, that the rule of *caveat emptor* has no place in the presence of actual fraud. Appellant also urges, however, that, even if the foregoing contention be not sustained to its full extent, the court, by the fourth question, and the charge with reference to it, imposed too high a duty of diligence upon plaintiff.

That some measure of diligence, or, rather, absence of af-

firmative negligence, is ordinarily essential in one seeking in court relief from fraud, whether by damages or rescission, has been (so) recently reiterated by this court, in *Bostwick v. Mut. L. Ins. Co.* 116 Wis. 392, 89 N. W. 538, 92 N. W. 246, and *Northern S. Co. v. Wangard,* 117 Wis. 624, 94 N. W. 785, where a very complete collection of the authorities is made, that we cannot feel justified in any extended discussion of the subject now. It rests on the idea that one cannot be defrauded by an assertion of what he knows to be false, and that courts will presume that an ordinary person does know those things which are obvious to ordinary observation. It rests on the same reasons as the rule so well established in negligence cases, that courts will not deem credible a party's own testimony that he looked, and did not see that which must have been plain to his vision. *Cawley v. La Crosse City R. Co.* 101 Wis. 145, 77 N. W. 179; *Koester v. C. & N. W. R. Co.* 106 Wis. 460, 82 N. W. 295. Hence courts will deny relief to him who shuts his eyes to that which is clearly apparent, if, knowing it, he could not have been deceived by defendant's misrepresentation. *Locke v. Williamson,* 40 Wis. 377; *Mamlock v. Fairbanks,* 46 Wis. 415, 1 N. W. 167; *Prince v. Overholser,* 75 Wis. 646, 44 N. W. 775; *Farr v. Peterson,* 91 Wis. 182, 187, 64 N. W. 863.

When, however, we come to consider the degree of diligence essential in the presence of actual fraudulent misrepresentation, we find a multitude of at least apparently inconsistent and conflicting remarks or *dicta,* many of them doubtless correct enough as applied to the situation then in hand, but quite misleading as general rules of law. Expressions like "due diligence," "ordinary care," and the like, have been used, perhaps properly with only their intrinsic meaning, but rendered of doubtful propriety in view of the technical meaning which has become attached to such expressions in administering the law of negligence in other aspects. Both

the question to the jury and the instruction in the instant case suggest, at least, that recovery for deceit can be had only by one who has exercised the care of an "ordinarily prudent man." This obviously cannot be true as a general rule, for frauds are more likely to be effective, and even more certainly ought to be redressed, when practiced upon the weakminded or the inexperienced; in other words, upon those who lack the prudence and intelligence of the ordinary person. "It is as much an actionable fraud willfully to deceive a credulous person with an improbable falsehood as it is to deceive a cautious, sagacious person with a plausible one." *Barndt v. Frederick,* 78 Wis. 1, 11, 47 N. W. 6, 9. The law has always been most vigorous in denunciation of fraud practiced on such incapables, but any redress would ordinarily be impossible, if, as a condition, the jury must find that the sufferer exercised ordinary care and diligence, according to the technical meaning of that phrase. Nevertheless such a question as that now criticised was fully approved in *Farr v. Peterson, supra.* In that case, however, all parties proceeded upon the assumption that the plaintiff was fully up to the ideal standard—the man of ordinary prudence. Where that appears conclusively, we are not inclined to hold it error to embody such a standard in the question by which to measure his conduct. If he be such a man, then he must be presumed to see and know that which under all the circumstances was apparent to ordinary intelligence and observation. In this case there exists even more justification for the use of such a standard of comparison, for it was proved conclusively that plaintiff was a man of exceptional shrewdness, acuteness, and experience in the buying and dealing in stocks of goods. He, with some modesty of expression, admitted upon the stand that, while there might be more competent and more experienced men in that line, none such had come within his acquaintance. So we conclude that the undisputed facts rendered permissible in this case the

comparison of plaintiff's conduct with that of ordinarily pru-
dent persons, though a similar question might well be errone-
ous or inconclusive in the absence of undisputed showing as
to plaintiff's competency.

Another criticism is upon the charge that "the plaintiff is
required to exercise ordinary care and prudence." It is said
that this conveys the idea, as a general rule, that one to whom
statements of fact are made must always meet them with
suspicion—must take at least some precaution to ascertain
whether they may not be false. If that be its effect, it is in-
correct. There is no rule of law demanding universally any
such duty of suspicion. In absence of anything to put one
on his guard, and in absence of full opportunity to observe
and know the fact, he has the right to believe and rely upon
representations of material facts made to him by the opposite
party, and if they prove false and fraudulent, to demand re-
lief from their effect. *McClellan v. Scott,* 24 Wis. 81, 86;
*Birdsey v. Butterfield,* 34 Wis. 52; *Krause v. Busacker,* 105
Wis. 350, 81 N. W. 406. It is in relation to this situation
that the remark has often been aptly made that "the rule of
*caveat emptor* has no application to cases of fraud." *Beetle
v. Anderson,* 98 Wis. 5, 73 N. W. 560; *Bostwick v. Mut. L.
Ins. Co.* 116 Wis. 392, 89 N. W. 538, 92 N. W. 246. For
example, had plaintiff made this trade in Madison without
sight of the goods or opportunity to see the inventory, upon
defendant's statement that it footed $8,500, there probably
would have been no question of ordinary care for considera-
tion; he knowing nothing to arouse doubt of the statement,
nor having any present means of knowledge as to the truth
or falsity thereof. On the contrary, however, when the means
of knowledge as to the true state of facts is so spread before
him that by ordinary observation he cannot but know it, very
different considerations are then involved. If he could not,
without substantially closing his eyes to what is before them,
be ignorant, he will be presumed to know, unless, indeed, he

be diverted from observation by some artifice or further mis-
representation. He cannot longer be supposed to rely on
what is told him, but on what he sees and knows. When we
enter this field, however, we are obliged to use terms and ex-
pressions not entirely exact in their signification. When we
speak of a fact being obvious or open to ordinary observa-
tion, those expressions must cover a multitude of degrees of.
obviousness. Some things are, and some are not, so plain as
to fall one side or the other of the legal line. Again, a thing
may be obvious to one person, and not at all apparent to an-
other. Hence attempt must be made to guide a jury as to
how obvious must be the fact in order that the law will pre-
sume knowledge. Courts have used many different *formulæ*
to define the duty of a purchaser when once the actual facts
are spread open to his observation or discovery, so that he
owes some duty even to himself; also of the conditions under
which the presumption of knowledge will be indulged. Thus
the original case in this court denies right of reliance "when
the defects in the goods are patent and obvious to the senses,
when the purchaser has a full opportunity for examination."
*Locke v. Williamson,* 40 Wis. 377, 379. "Fraud must be such
that the party could not, with reasonable diligence, acquire
knowledge thereof when put on inquiry." *Prince v. Over-
holser,* 75 Wis. 646, 650, 44 N. W. 775. The query, "Did
plaintiff use due and proper caution and diligence in endeav-
oring to ascertain the true boundary?" was held at least suffi-
ciently favorable to defendant in *Castenholz v. Heller,* 82
Wis. 30, 33, 51 N. W. 432. A party may rely "so far as
falsity was not obviously discoverable." *Porter v. Beattie,*
88 Wis. 22, 32, 59 N. W. 499, 503.

"If plaintiff had notice of the actual facts, or had knowl-
edge of such facts as would have led to the discovery of the
truth by the use of reasonable diligence, and failed to use
such diligence, she cannot now say that she was defrauded
in the purchase. She cannot close her eyes to the facts which

are before her, or the information which is at hand." *War-ner v. Benjamin,* 89 Wis. 290, 295, 62 N. W. 179, 180.

"The law requires men, in their dealing with each other, to exercise proper vigilance and apply their attention to those particulars which may be supposed to be within the reach of their observation and judgment, and not to close their eyes to means of information accessible to them." *Farr v. Peterson,* 91 Wis. 182, 187, 64 N. W. 863, 865.

One must be presumed to observe such things as "would ordinarily be observed by a person in handling his own property under the circumstances." *Bostwick v. Mut. L. Ins. Co.* 116 Wis. 392, 89 N. W. 538, 92 N. W. 246. In the late case of *Northern S. Co. v. Wangard,* 117 Wis. 620, 94 N. W. 785, we took occasion to point out the erroneous character of an instruction which suggested a duty on the part of a buyer to suspect and search for a defect or variance from the fact as warranted or represented; and it was there reiterated that the rule of *caveat emptor* applies only "as to patent defects if the purchaser has full means of knowledge thereof by the exercise of ordinary attention to his business, which requires him to at least look at what he buys, . . . so as to observe patent imperfections, if there are such." In *Shaw v. Gilbert,* 111 Wis. 165, 188, 86 N. W. 188, this court apparently transported the complete doctrine of contributory negligence into the duty of a plaintiff to guard against belief in and reliance upon the willful fraud of defendant, and what was there said would inferentially support the instruction now under consideration. There is now discovered, however, a most unfortunate mistake in the statement of the error which was assigned, considered, and intended to be condemned in that case. For that mistake the writer of the opinion was responsible, and hastens to avail himself of this opportunity to make correction, so far as possible. The question of which exclusion from the special verdict was assigned as error was not whether the plaintiff was guilty of a slight want of ordinary care in relying upon or believing the alleged misrepre-

sentation, as incorrectly stated, but whether she was guilty
of such want of care in extending credit to an insolvent cor-
poration; in other words, in exposing herself to some or all
of the damage which she claimed to have suffered. Obviously,
therefore, the question actually decided in *Shaw v. Gilbert*
was not that now under consideration, and that case is not
authority upon this.

After thus reviewing the various cases upon the subject,
it is apparent that the duty of a purchaser of goods upon rep-
resentations of another is best and most nearly accurately
expressed in terms such as those just quoted from *Northern
S. Co. v. Wangard,* or in those from *Farr v. Peterson, supra.*
The tendency observable in several recent trials at circuit to
confuse the doctrine of contributory negligence as a defense
to actions for negligence with the failure of a plaintiff to ob-
serve what is patent as an obstacle to recovery for willful
fraud should at once be corrected, and the use of terms be-
longing to and having an exact and technical meaning in the
former field should be avoided in charging juries with refer-
ence to the latter. It being conceded, however, that the in-
struction complained of in this case was unfortunate and to
the professional mind might seem to import into this case
the general rules measuring contributory negligence, yet it
does not follow that the jury were necessarily misled to ap-
pellant's prejudice. We have already pointed out that the
plaintiff being by conclusive proof a person of at least ordi-
nary intelligence and acuteness, no error existed in the sug-
gestion that the jury might consider his conduct on the as-
sumption that he would observe and know what the ordi-
narily prudent and diligent man would under like circum-
stances. Further than this, it being shown conclusively that
the inventory itself was placed in his hands and examined
by him so that the amount of its total was apparent to at least
some measure of observation, the question arose whether that
degree of scrutiny which would have disclosed the falsity of

defendant's representation was so within "ordinary attention to his business" that a presumption of its exercise must be indulged, or its failure be deemed a closing of his eyes to that which was obvious. The trial court saw fit to describe this ordinary attention to business as "ordinary care and prudence." That phrase, while technical to a lawyer, would not necessarily be so to a layman, and may well have conveyed to the jury the same idea as the better and more guarded one, "ordinary attention." The phrase used is not erroneous in the ordinary and popular acceptation of its words, even though it might be in their technical meaning in the law of negligence. Doubtless the statement of a general rule that a purchaser upon representations owes a duty of such care and prudence as ordinarily careful persons exercise under like circumstances would be erroneous, as conveying the idea of duty to look out for fraud; but the instruction here was confined to the plaintiff, a man of fully ordinary prudence and caution, who had present to his eyes full information of the falsity of the representation. Hence, after some hesitation, we have reached the conclusion that, in its relation to the facts of this case, the instruction given was not so erroneous or misleading as to lead to the view that the answer to the fourth question was or might have been the result of a misapprehension of the law by the jury, and therefore cannot justify reversal.

*By the Court.*—Judgment affirmed.

SIEBECKER, J., took no part.