MILLER, Respondent, vs. HACKBARTH, Appellant.

*October 6—October 24, 1905.*

*Exchange of property: Fraud: Representations as to incumbrances: Rescission: Replevin: Pleading.*

1. Plaintiff traded horses with one M., who asserted positively that no mortgage existed against his horse. M. had often sold cattle to plaintiff, the title to which had proved good, and there was nothing to arouse suspicion as to his veracity. The trade was made in the evening, and the records of chattel mortgages were at a distance in an adjoining township. *Held,* that it was consistent with ordinary care for plaintiff to rely upon M.'s assertion, and that upon discovering its falsity he had a right to rescind the trade and revest himself with the title to his horse.

2. The modern action of replevin, under our statutes, is a plain action for the recovery of personal property, the gravamen of which is the unlawful detention; and the existence or nonexistence of any trespass by defendant in acquiring the property is immaterial to the relief, except as it may color the subsequent possession. An allegation of unlawful taking is therefore unnecessary, and may be treated as surplusage.

APPEAL from a judgment of the circuit court for Milwaukee county: LAWRENCE W. HALSEY, Circuit Judge. *Affirmed.*

Action commenced in justice's court upon affidavit alleging that defendant had unjustly taken and unjustly detained a certain horse of value of $100, to possession of which plaintiff was entitled. Upon appeal to circuit court the case was tried *de novo,* and it appeared, without dispute, the plaintiff had traded the horse in question to one August Miller for another horse, which proved to be incumbered by a chattel mortgage, contrary to express representations by Miller. The horse so received by plaintiff having been taken from him under the chattel mortgage, and August Miller having absconded, plaintiff went to the Cotzhausen farm, of which August had charge, and found the horse in the possession of the defendant, from whom he demanded it, but who refused to give it up, referring plaintiff to Arthur Cotzhausen, who, upon application to him, refused delivery. Whereupon this action was brought. No proof was offered as to how possession or any rights in the horse had devolved from August Miller to the defendant, except that the former had abandoned the Cotzhausen farm.

At the close of the evidence the court directed a verdict that the plaintiff was entitled to possession and was the owner of the property; that the defendant unlawfully took and detained the same; that the value was $100, and damages six cents; upon which judgment in favor of the plaintiff was accordingly rendered, from which the defendant brings this appeal.

*Arthur Cotzhausen,* for the appellant.

For the respondent the cause was submitted on the brief of *Edgar L. Wood.*

DODGE, J. There is no contradiction of the plaintiff's evidence that he was induced to part with the horse in question to August Miller upon the representation that the latter owned

the horse traded therefor unincumbered; nor that this statement was false and that the horse received by plaintiff in consideration of the trade was taken from him under a mortgage and wholly lost to him; nor that he demanded possession from the defendant, in whose custody he found his horse; nor that the defendant refused to give it up, as also did Mr. Arthur Cotzhausen, to whom plaintiff also applied. Upon this state of facts but two questions of law arise:

1. Was the representation by August Miller such that the plaintiff might reasonably have relied upon it and been thereby induced to part with his horse, so that, upon discovering its falsity, he had a right to rescind and revest himself with the title? Upon this question we think the conclusion of the court was right. We are aware of the numerous decisions to the effect that silence, or in some cases even express misrepresentation as to facts appearing by public record, cannot be considered sufficient to constitute legal fraud, for the reason that under the circumstances in such various cases the record information of their falsity was open and accessible and would have come to the notice of one in the ordinary course of doing such business. The degree of observation required to be observed and the knowledge imputed to one buying goods from another is discussed at considerable length in *Kaiser v. Nummerdor,* 120 Wis. 234, 97 N. W. 932. That the rule that statements or representations by a party, whose falsity might be discovered by careful inspection of public records, can never be legal fraud, is not universal, is shown by several decisions in this state (*Booth v. Ryan,* 31 Wis. 45; *Zunker v. Kuehn,* 113 Wis. 421, 88 N. W. 605; *Lockwood v. Allen,* 113 Wis. 474, 89 N. W. 492; *Hurlbert v. T. D. Kellogg L. & Mfg. Co.* 115 Wis. 225, 91 N. W. 673); and the test must be, as stated in *Kaiser v. Nummerdor,* whether one in the exercise of that measure of observation customarily accompanying such transactions would have examined the record and discovered the falsity of the statements before relying on

them. In the present case the trade took place at West Allis in the evening. The records to which reference must have been made were located somewhere in the adjoining township of North Greenfield. There was nothing to arouse suspicion as to August Miller's veracity; he having often sold cattle to the plaintiff without defects in his title being thereafter discovered. We think in this situation the court rightly held that it was not inconsistent even with ordinary care that the plaintiff should rely on the direct and positive assertion of the very material fact that no mortgage existed against the property received in trade.

2. The second legal obstacle to the conclusion of the trial court, urged by appellant, is that the present action was laid in *cepit,* alleging an unlawful taking as well as unlawful detention, but that the proof discloses no unlawful taking, and hence the action as laid is not sustained. . We agree with him as to the effect of the evidence. There is nothing to show that the defendant came into the custody of this horse unlawfully, but merely that he refused to deliver it up when the plaintiff demanded it. Appellant supports his contention upon the law by citation of *Ronge v. Dawson,* 9 Wis. 246, and *Child v. Child,* 13 Wis. 18, to which might be added *Oleson v. Merrill,* 20 Wis. 462. These cases, however, all dealt with the ancient action of replevin, originally an action in tort based upon the trespass involved in the wrongful taking, which, however, had been enlarged at common law so as to include replevin in *detinet,* where the plaintiff waived the trespass and merely rested upon an unlawful detention. Much technicality and learning was expended upon this distinction, and it had been held, as stated in cases above cited, that, where the plaintiff framed his action upon the wrongful taking, he could not then recover possession merely for the wrongful detention. This subject, however, has become obsolete since the Code, which entirely eliminated the ancient common-law action of replevin as the means of regaining possession of chat-

tels, and substituted, under a chapter entitled "Claims and delivery of personal property," an "action to recover the possession of personal property," and required for this action merely the fact and the allegation of wrongful detention. See Code, tit. 7, ch. 2, § 115, subd. 2, and ch. 128, R. S. 1858. True, it has not been uncommon for the courts to refer to this new Code action as replevin, and in 1878 the revisers returned to that word as a title for the chapter on the subject, but the undoubted purpose and effect of the codification, and of the present preservation of it in our statutes, was to substitute for the ancient common-law action of replevin, with its technical distinctions, a plain action for the recovery of personal property, where the existence or nonexistence of any trespass by the defendant in acquiring the property is immaterial to the relief, except as it may color the subsequent possession. *Oleson v. Merrill, supra; Starke v. Paine,* 85 Wis. 633, 55 N. W. 185. The gravamen of the modern action for the recovery of possession of personal property is the unlawful detention thereof by the defendant, and the allegation in a pleading of an unlawful taking is unnecessary and mere surplusage, though the unlawful taking may still support an action of trespass to recover damages caused thereby. Hence we conclude that under the present affidavit plaintiff was entitled to recover upon proof of the unlawful detention.

*By the Court.*—Judgment affirmed.