RICHARD G. HOLBROOK *vs.* JAMES F. CONNOR and another.

*Fraudulent misrepresentations—what are not actionable—what are matters of opinion.*

An action of tort for deceit in the sale of real estate, does not lie for the fraudulent misrepresentations of the vendor as to the price which he paid therefor. KENT and DICKERSON, JJ., dissenting.

False and fraudulent affirmations by the vendor of lands that 'said lands had large deposits of oil in them, and were of great value for the purpose of digging, boring for, and manufacturing oil,' accompanied with the statement that the lands had not been tested, are matters of opinion, and not actionable.

ON EXCEPTIONS AND MOTION to set aside the verdict as against

law, and the weight of evidence, and because the allegations do not support it.

CASE for deceit in the sale of land.

The defendant Lancey, claimed to be the owner of two hundred acres of land in Canada.

The other defendant, acting as the agent of Lancey, came to Maine for the purpose of getting up an association of individuals to whom he might sell the land for the purpose of manufacturing oil. A paper was drawn and signed by Connor, for Lancey, therein stipulating, among other things, that Lancey would put fifty acres of the land into five hundred and sixty shares, of twenty-five dollars each; and when the shares were all subscribed and paid for, the subscribers were to be the equitable owners of the real estate, in proportion to the number of shares subscribed and paid for by each.

All the shares were taken, the plaintiff having subscribed for twenty, for which he paid five hundred dollars.

Subsequently the land was conveyed in trust for the benefit of the subscribers.

The plaintiff, in his declaration, alleged that the defendants conspired to cheat and defraud him, and that in subscribing and paying for his shares, he relied upon representations of the defendants,— ' that the said lands had large deposits of oil in them, and were of great value for the purposes of digging, boring for, and manufacturing oil; and that said Lancey and said Connor had actually paid the sum of $14,000 therefor.'

There was testimony tending to prove that these representations were false and fraudulent, and that the defendants actually paid a much less sum for the land thus sold.

The remainder of the case, so far as actually decided, sufficiently appears in the opinion.

The verdict was for the plaintiff.

*D. D. Stewart,* for the plaintiff.

*A. Libbey & G. W. Whitney,* for the defendants.

DANFORTH, J. The declaration in the writ in this case, after some preliminary allegations, sets out that the plaintiff, ' relying upon the aforesaid representations of the said defendants, that said lands had large deposits of oil in them, and were of great value for the purposes of digging, boring for, and manufacturing oil, and that said Lancey and said Connor had actually paid the sum of $14,000 therefor, was induced to enter into a joint stock company, with other persons, and to subscribe for and buy of said defendants, twenty shares in said alleged oil lands and oil well, and for which he then and there paid the sum of five hundred dollars in money.' That these representations were false, and were fraudulently made is also alleged. Upon these two allegations the plaintiff's action rests, and if neither of them, or the testimony offered to prove them is sufficient to sustain the suit it must fail.

In regard to the first allegation, ' that the lands had large deposits of oil in them,' etc., it is contended that the instruction to the jury is erroneous, inasmuch as it was left to them to find whether the statement was understood as a matter of opinion or the representation of a fact as with the knowledge of the defendants. It is not claimed that the law as given is incorrect, but that it is not applicable to the case as proved. This objection, we think, rests upon a valid basis.

It is true that the language of the beginning of the allegation is the statement of a fact. It is a fact, however, which, unconnected with the other part of the sentence, is of but little consequence. For the lands were sold and purchased for the purpose of making profit in obtaining oil from them.

Assuming, then, that they had large deposits of oil, we have made but little progress in ascertaining their value for the purpose of ',digging, boring for, and manufacturing oil.' This would depend very materially upon the facilities of getting to the lands, the expense of sinking wells, getting the oil to market, and many other things affecting the cost of production and the market price of the oil.

The whole sentence, then, seems to be but the expression of an

opinion that the land is valuable for the purposes indicated, containing but one fact out of many upon which a correct judgment must be founded. It is but an opinion of the value or quality of the land. On recurring to the testimony we find that the statement was and must necessarily have been only an opinion, and was taken as such by the plaintiff. It was in proof that up to the time of the trial, the lands had not been tested, and it was entirely unknown to both parties whether the land was valuable as oil land, except so far as might be inferred from the production of wells on neighboring lands, and the single well upon the land in question.

The plaintiff himself testified that Connor, one of the defendants, 'said the fifty acres was good oil land, and pointed to these wells not a great way off in proof of his statement.'

On cross-examination he says, 'I understood the two hundred acres had not been tested, and that operations upon it might be unsuccessful. I understood I was making a speculation which might be unsuccessful. . . . I expected to suffer loss if we did not find oil, or if oil went down.' This, corroborated by other testimony and uncontradicted, shows conclusively that the statement was made and understood as a matter of opinion. It may be true that the statements made in relation to the neighboring wells in support of this opinion were false and fraudulent, but that is not the fraud complained of in this action. It is clear that the verdict cannot be sustained under this allegation. Even if sufficient in other respects there is no testimony to show the falsehood of the allegation, so far certainly as it refers to the deposits of oil. On the other hand, the case shows that up to the trial the land had not been tested, and for aught that appears there may be oil enough in it to supply the world for an indefinite period.

The only other allegation on which the plaintiff rests his action, is that which relates to the price paid for the land.

We think that such a statement though false, is not sufficient to sustain an action.

It was early decided that no action would lie against a man for falsely declaring that a third person would have given him so much for his land. Roberts on Frauds, 524, and cases cited.

This was recognized as good law in *Cross* v. *Peters*, 1 Maine, 389, and, so far as we are aware, has never since been questioned.

In *Medbury* v. *Watson*, 6 Met. 246–260, it was held that a false statement by a third person as to what the owner paid, is actionable. But in the same case in the opinion, on p. 259, it is said that ' in regard to affirmations and representations respecting real estate, the maxim of *caveat emptor* has ever been held to apply. When, therefore, a vendor of real estate affirms to the vendee that his estate is worth so much, that he gave so much for it, that he has been offered so much for it, or has refused such a sum for it, such assertions, though known by him to be false, and though uttered with a view to deceive, are not actionable.'

In *Hemmer* v. *Cooper*, 8 Allen, 334, in the opinion, it is said, ' The representations of a vendor of real estate to the vendee, as to the price paid for it, are to be regarded in the same light as representations respecting its value. A purchaser ought not to rely upon them; for it is settled that, even when they are false, and uttered with a view to deceive, they furnish no ground of action.' And that was the only point raised in the case.

In *Manning* v. *Albee*, 11 Allen, 622, Gray, J., says, ' This court has repeatedly recognized and acted upon the rule of common law, by which the mere statements of the vendor, either of real or personal property, not being in the form of a warranty, as to its value, or the price which he has given, or been offered for it, are assumed to be so commonly made by those holding property for sale, in order to enhance its price, that any purchaser who confides in them is considered as too careless of his own interests to be entitled to relief, even if the statements are false and intended to deceive.'

As late as *Cooper* v. *Lovering*, 106 Mass. on p. 79, Ames, J., in the opinion, says, ' It has been repeatedly decided that representations of a vendor, as to the value or cost of the property to be sold, or as to offers for it made by others, even though false, are not representations upon which a purchaser ought to rely, and are not sufficient to furnish any ground of action.'

In *Mooney* v. *Miller*, 102 Mass. 220, the same doctrine is recognized.

Holbrook *v.* Connor.

The same doctrine has been held in our own State, so far as the question has been discussed.

In *Long* v. *Woodman*, 58 Maine, 52, *Hemmer* v. *Cooper* is recognized as good law, and the principle is still more fully discussed in *Martin* v. *Jordan*, 60 Maine, *ante.*

In a late English work of good authority, representations by the vendor, as to price paid by him for land, are regarded in the same light as representations respecting its value, or the offers which have been made for it. It is there said, ' a purchaser is not justified in placing confidence on them.' Kerr on Fraud and Mistake, 88.

This view seems to have been considered as well-settled law by all the authorities bearing upon the question, so far as we have been able to ascertain, with the exception of *Sanford* v. *Handy*, 23 Wend. 260, and *Van Epps* v. *Harrison*, 5 Hill. 63. In the latter of these cases Bronson, J., says : ' In *Sanford* v. *Handy*, it was intimated that a vendor would be liable for misrepresentations as to cost, but the point was not decided.' He then states his own convictions as decidedly the other way. And after giving his reasons for his own views with much force, he closes by saying, ' the majority of the court think otherwise.'

This case, decided by a bare majority, with the reasons given all against the decision, is the only case directly in point, in conflict with the authorities before cited.

The other cases cited in the argument for the plaintiff are decided upon different principles, and are not in conflict with those relied upon in defense. Some of them were decided on the ground that a confidential relation existed between the vendor and vendee. This was the case in *Bagshaw* v. *Seymour*, 93 Eng. Com. Law, 373, and *Clark* v. *Dixon*, 95 Eng. Com. Law, 452, where the defendants acted in behalf of, and as agents for the plaintiffs. In *Bradley* v. *Poole*, 98 Mass. 169, and many of the cases cited, the representations were as to the condition of the company and the amount actually paid in, facts upon which the value of the shares sold, materially depended. Other cases rest upon statements of the amount paid for bonds in the market, or rents actually paid for

lands under lease, showing the actual market value of the property sold. All these cases are widely distinguishable from the one at bar. What a person may have paid for land is one thing, its actual market value another, and often a very different thing. The purchaser of land for a company, though not especially appointed as agent therefor, would not be permitted to deceive, or even make a profit out of those for whom he assumed to act, and who subsequently adopt or ratify what he has done. In the case at bar, the defendants, in making the purchase of the land, were not the agents of the association, nor did they assume to act for or in their behalf. The purchase was made before the company was formed, and, so far as appears, before its organization was contemplated. The contract of the parties does not refer to the original purchase. So far as the land is referred to it provides simply for a sale, which is completed by a deed subsequently given. True it was sold for the purpose of forming a joint stock company, of which the defendants were to be members ; still it was but a sale, and the parties to this case stand to each other in the relation of grantor and grantee and no other, and in the writ are so declared to be. Viewing the authorities then, as bearing upon the admitted facts of this case, they would seem to be nearly all one way, very clearly showing, that a false representation, by the vendor, of the price paid for land, will not lay the foundation for an action. And if we add to these the long list of cases in which it has uniformly been held, that misrepresentations as to value and quality, and even of offers made by third persons, though fraudulent, are not actionable, it would seem that the law upon the question we are now considering must be free from doubt. If we examine the question upon principle the result must be the same. The statement of the vendor, that he paid a certain price for his land, if true, can be no more than an indication of his opinion of its value, and when we consider the various motives which may, and often do actuate men in making their purchases, and especially when it is done for the purposes of speculation, it is but the slightest proof of such an opinion. It is certainly of no more value than the offer of a third per-

Holbrook *v.* Connor.

son, and this is considered of so little worth, that it is not legal testimony in a case where the market price is in issue.

It is, however, claimed that the price paid is a definite fact, the truth or falsity of which is susceptible of satisfactory proof, while assertions of quality and value are necessarily matters of opinion which are too uncertain for judicial cognizance. This may be true, and the same may be said of offers made as well as many other representations not actionable. But it should also be remembered, that a misrepresentation, to be the foundation of an action, must relate, not only to an existing fact, but to a material one ; one which will enable the purchaser more intelligently to form his own opinion of the value of the property. Now, as we have already seen, the price paid, if correctly stated, is but an uncertain indication of the vendor's opinion. It gives no light whatever as to any inherent fixed quality, or description which goes to make up the value, and, in this respect, is not distinguishable from an offer made, except that it is even more unreliable, as an indication of value. The instructions of the presiding justice not being in conformity with these views, and being inapplicable to the case as presented by the testimony, the exceptions must be sustained, and it is unnecessary to consider the various other points raised.

*Exceptions sustained.*

CUTTING, WALTON, BARROWS, and VIRGIN, JJ., concurred.

The following dissenting opinion was delivered by

DICKERSON, J. The exceptions present the question, whether a false representation, fraudulently made, as to the cost of the property, is an element of fraud in an action of deceit to recover damages for the injury sustained, on account of such representation. Though the authorities are not in perfect accord upon this question, yet we think that the weight of authority, as well as the better opinion, is decidedly in favor of the affirmative.

While misrepresentation of the cost of property does not ordinarily increase its value, it is a material fact, and naturally calculated to mislead the purchaser by its tending to enhance its value,

and give it an attractiveness and firmness beyond that given by the force of mere opinion. Especially is this the case when the vendee reposes confidence in the knowledge, sagacity, and integrity of the vendor, who has himself alone examined the property.

When the property is to be put into a joint stock company, the cost price is the basis for fixing the capital stock, and the price value of the share; and when the owner becomes a member of the company his investment is equalized with that of the other members of the company, though the per centage actually paid in by him may fall far short of that paid in by them. It is easy to see how the fact, that a man of known sagacity in matters of business, with favored opportunities for examining the property and judging of the prospects of the enterprise to be projected upon it, is willing to pay a large sum for such property, put it into a joint stock company at cost, and share his profits in common with the other shareholders, is calculated to increase other persons' estimate of the value of the stock, and induce them to become its purchasers. Does the law hold a vendor harmless, who makes use of the confidence which these considerations awaken among his friends and acquaintances to obtain from them their money or other property for a moiety of its value?

Representation of cost is different from representation of value. The one is the statement of a fact, while the other is the expression of an opinion. Value is a matter of judgment and estimation, about which men may differ. The question of value, too, is one open alike to the vendee and vendor for inquiry, examination, and proof; the vendee, by the exercise of common prudence, may ascertain the truth of a representation of value, and save himself from loss. Not so with a representation of cost. This is not an opinion, but a fact, specially confided to the knowledge of the owner and his vendor; and they may sustain such confidential relations toward each other, that no prudence can discover the falsity of the representation. The same distinction between the assertion of a fact and the expression of an opinion or judgment is recognized in actions of warranty or deceit founded on representations

concerning the essential condition or qualities of the property offered for sale and exchange. This distinction is, moreover, expressly recognized in the decisions of courts of the highest authority, upon the identical question under consideration. The general principle is, that though the vendor need not speak, yet if he does, he should speak the truth.

If we pass from general principles to the authorities, we find that the English cases present an unbroken chain of decisions in harmony with these views. In *Elkins* v. *Kesham*, 1 Lev. 102, it was held that a false statement, that the property was rented for a higher sum than was actually paid, whereby the plaintiff was deceived and induced to pay a high price for the property, afforded good cause of action.· The same principle has been affirmed and applied in subsequent cases, the courts assigning as a reason for distinguishing between such cases and a false representation of value, that 'the value of the rents is a hard thing to be known, and secret, known to none but the landlord and the tenant, and they might be in confederacy together.' *Risney* v. *Selby*, 1 Salk. 214.

In *Bagshaw* v. *Seymour*, 4 C. B. (N. S.) 873, the common bench held the chairman of the directors of an Australian gold mining company responsible, for causing its stock to be put on the stock exchange list, by a false representation as to the amount of money paid, by which the plaintiff was induced to buy some of its shares.

The same court in *Clarke* v. *Dickson*, 6 C. B. (N. S.) 453, held a director of a lead and copper mining company, liable to a party who had been induced to purchase stock in that company, because of the false representation, fraudulently made, that the property had been purchased at a much greater price than was actually paid.

That case is very similar to the case at bar, in its facts and principles, and the decision of the court is directly in point. The same doctrine was held by the court of exchequer in *Bedford* v. *Bagshaw*, 4 H. & N. 538.

The court of errors of New York, in *Sanford* v. *Handy*, 23

Wend. 268, held that misrepresentation of the cost of land, rendered the vendor liable ; and this decision was subsequently affirmed by that court in *Van Epps* v. *Harrison,* 5 Hill, 70.

In *Page* v. *Parker,* 43 N. H. 369, the court held the same doctrine, and in commenting upon the case of *Van Epps* v. *Harrison,* say, ' we think the holding of the court was right.'

The court in this State held that false and fraudulent representations of the value and amount of the income of real estate, by which a party was induced to take a lease of the premises, rendered the lease void, on the ground, as stated by Shepley, J., who delivered the opinion of the court, that a representation relating to the income or rent of an estate does not come within the rule, that the seller is not bound by representations of the value of the property sold, because the knowledge of the value of the income in such case may be, and actually is, confined to one party, and the other can be presumed to ascertain it accurately only from him, or from those standing in a confidential relation to him. *Irving* v. *Thomas,* 18 Maine, 424.

The principle upon which that decision is thus put, applies, at least, with as great force to misrepresentations as to the cost of property ; for it is obvious that the means of ascertaining the truth of representations in regard to income are quite as accessible as the means of determining the truth of representations of cost. While the value of the income may ordinarily be obtained from inquiry and on examination of the premises, a knowledge of the cost price must be sought for in more recondite quarters.

Chief Justice Shaw, in *Hazard* v. *Irwin,* 18 Pick. 105, recognizes the distinction between a false averment in matters of fact, and a like falsehood in matters of judgment, opinion, and estimate, and thus illustrates the difference : ' If the owner of an estate affirm that it will let or sell for a given sum, when in fact such sum cannot be obtained from it, it is in its own nature matter of judgment and estimate, and so the parties must have considered it ; but if an owner falsely affirm that the estate is let for £30, when in fact it is let for £20, it is fraud, because the owner knows the fact, and

on inquiry by the vendee, the tenant might refuse to inform him, or give him false information.'

Mr. Justice Metcalf, also, in *Brown* v. *Cottles*, 11 Cush. 348, makes the same distinction, and cites the New York cases, which hold that false and fraudulent representations, in respect to cost, are actionable as coming within the rule applicable to misrepresentations in matters of fact, and as distinguishable from representations of value, former offers, probability, and like matters of opinion.

So the court in *Medbury* v. *Watson*, 6 Met. 246, held a third party responsible for falsely and fraudulently representing to the plaintiff that the owner of certain real estate paid a larger sum for it than he actually paid, whereby the plaintiff was induced to pay the same sum therefor, and was greatly damaged. But the court, in deciding that case, say that the averments in the declaration would not have been sustained, if the false representations had been made by the vendor to the vendee, thus for the first time in the history of jurisprudence upon this subject, as it is believed, distinguishing between representations made by the owner, and those made by a third party, and holding the latter alone actionable, when the representations relate to the cost of the property. There was nothing in the case that called for this remark; nor do the authorities cited warrant it, and the reasoning by which it is sought to be fortified, fails to convince us that it is good law, sound philosophy, or consistent with enlightened views of human nature. We are not quite prepared to say that persons are naturally more inclined to tell the truth about their neighbor's property than they are about their own, or that the statements of a third party in respect to another's property is more likely to deceive a purchaser than those made by the owner himself. Besides, the *dictum* in that case is in direct conflict with the then uninterrupted series of decisions of the courts in England and in this country, and as it seems to us, repugnant to reason and public policy.

The court in Massachusetts, however, recognized the distinction suggested in *Medbury* v. *Watson*, as law, and, in a very brief opinion, drawn by the learned member of the court, who was counsel

for the defendant in that case, without citing any other authorities than were there cited, held that fraudulent misrepresentations as to the price paid for real estate by the vendor, will not support an action for deceit in the sale of it. *Hemmer* v. *Cooper*, 8 Allen, 334.

Our objections to these two cases in Massachusetts may be thus stated: both reason and authority seem to us to be opposed to the distinction set up in the former case, and to recognize the distinction denied in the latter case. In view of these considerations, it is, perhaps, not too much to say that these cases, for some cause, failed to receive that thorough examination and careful consideration which have generally marked the decisions of the learned court in Massachusetts.

That court already seems to have felt the embarrassment which those cases present in more recent decisions. It held in *Manning* v. *Albee*, 11 Allen, 522, that false and fraudulent representations as to the market value of certain railroad bonds entitle the purchaser to rescind the contract. In delivering the opinion of the court in that case, Mr. Justice Gray felt constrained to say that the utmost limit of the rule which does not recognize a false representation of value as an element of fraud have been reached in *Hemmer* v. *Cooper*, in applying it to statements of the price paid by the person making them.

Again the court in Massachusetts enunciate principles and cite authorities in *Bradbury* v. *Poole*, 98 Mass. 182, which seem to us irreconcilable with the doctrine of *Hemmer* v. *Cooper*. In view of the great weight of authority upon this subject, and the later decisions in Massachusetts, the *dictum* in *Medbury* v. *Watson*, which ripened into law in *Hemmer* v. *Cooper*, can hardly be said to be regarded as law in that State at the present time.

The rule of law upon this subject we now consider as settled, that where a vendor makes a false and fraudulent representation as to the cost of the property, and the vendee reposes confidence in such representation, and is deceived and injured thereby, he may maintain an action for the deceit against the vendor, to re-

Holbrook *v.* Connor.

cover the damages for the injury he has sustained. Such representation is not to be excluded from the consideration of the jury, either on the ground that it is a mere matter of opinion, or is so commonly made by property-holders that any purchaser who confides in it is to be considered too careless of his interests to be entitled to relief; but it is a fact proper to be submitted to the consideration of the jury in an action of deceit upon the question whether a fraud has actually been committed, and an injury sustained.

The instructions of the presiding justice, in the case at bar, were in substantial compliance with this rule of law. They were, at least, quite as favorable to the defendants as they had a right to require. He instructed the jury that the representation, as to cost, was important only as it was connected with the agreement, if any such there was, to put the lands into the company at cost, and that the jury were to judge of the materiality of the representation, both with respect to its effect upon the interests of the plaintiff in the subject-matter of the purchase, and as an inducement for him to enter into the contract. The instructions upon this branch of the case were clear, explicit, and full, and afford the defendants no cause of complaint.

The general rule for estimating the damages laid down by the presiding judge furnishes the defendants no legal ground for exceptions, as it is quite as favorable to them as the law allows.

The other exceptions to the judge's charge do not seem to be very much relied upon in the argument, and are in substantial accordance with the rules of law. Nor do we see any objections to his rulings during the progress of the trial. The motion for a new trial cannot be sustained. It was a question of fraud. There was a mass of conflicting evidence, and the jury were the proper judges of the credibility of the witnesses, and the weight of evidence. We think the entry should be        *Motion and exceptions overruled.*

*Judgment on the verdict.*

KENT, J., concurred.