### SCOTT v. McWILLIAMS.

No. 2816.

Court of Civil Appeals of Texas. El Paso.

April 27, 1933.

Rehearing Denied May 18, 1933.

J. U. Sweeney and J. E. Quaid, both of El Paso (Jones, Goldstein, Hardie & Grambling, of El Paso, of counsel), for appellant.

C. W. Croom, of El Paso, for appellee.

WALTHALL, Justice.

In this case George McWilliams sued R. Q. Scott to cancel a contract involving the purchase by him from R. Q. Scott of certificates of stock in a corporation, and in the alternative sues for actual and exemplary damages.

In the month of August, 1931, R. Q. Scott owned and contracted to sell to George McWilliams 23 per cent. of the capital stock represented by two certificates of stock, one for 22 shares and one for 24 shares, in Camp Del Norte, Inc., a tourist camp in El Paso county, for the sum of $13,000, provided the plaintiff (George McWilliams) on his return to New York could obtain said amount of money.

McWilliams eventually secured $13,000 and paid Scott the money and received from him the two certificates of stock. At the same time and under the same conditions McWilliams purchased stock from Scott in the Del Norte Oil Company, Inc., for the sum of $690, and paid for same.

This suit is brought to cancel the sale of the said certificates of stock and recover back the money paid, and in the alternative for damages, by reason of certain alleged representations made to induce said sale which are alleged to have been false, etc.

In the first count, briefly stated, McWilliams alleged that prior to August, 1931, Scott had organized the corporation "Camp Del Norte, Inc.," which was doing business as a

tourist camp in El Paso county, Tex.; that on the date mentioned Scott owned more than 75 per cent. of the capital stock of said corporation, was familiar with its business, its assets, liabilities, and its gross and net profits; that being desirous of purchasing an interest in said corporation, and Scott being desirous of disposing of said two certificates of stock they conferred together as to said sale; that for the purpose of informing him as to the financial condition of said corporation and the value of its capital stock he proposed to sell, its assets and liabilities, its net earnings for the next previous year, Scott represented to him, McWilliams, that at such time: (a) Said corporation had assets of the actual value of $70,000; (b) that the net surplus of said corporation was the sum of $30,000; (c) that said corporation had produced and earned a net profit for the next preceding year of the sum of $13,000.

McWilliams alleged that relying on said representations he agreed to buy said stock for $13,000 provided that on his return to New York he could obtain said amount of money; that on the 9th of October, 1931, he, McWilliams, being in New York, and said sale not having been consummated, he requested Scott to submit and Scott did submit to him a written statement as to the financial condition of said corporation, in which statement Scott represented that said corporation had assets totaling $74,185.25; that it had a net surplus of $32,150.09, and had earned a net profit beginning August 1, 1930, and ending August 1, 1931, of $13,938.-35.

That on or about November 1, 1931, he, McWilliams, purchased from Scott said two certificates of stock, agreeing to pay and paid in cash therefor, beginning on the 1st of November until about the 1st of March, 1932, $13,000.

McWilliams alleged that the verbal representations made by Scott in August, 1931, and the written representations made on October 9, 1931, were false and untrue and were known by Scott to be untrue when made, and were willfully and fraudulently made for the purpose and with the intention of inducing him to purchase said stock and pay for same; that said representations were material and the inducing cause and causes of said purchase; that he, McWilliams, relied upon each and all of said representations, believing them to be true and was thereby induced to purchase said stock, and otherwise he would not have purchased said stock but for said representations.

Scott answered by demurrers, general and special, general denial, specially denied having made the alleged representations, alleged that McWilliams made his own investigation and bought the stock as a result of his own knowledge of the business of the corporation.

The case was submitted to a jury on special issues. The jury found:

1 and 2. Prior to and in consummation of the agreement to purchase the 46 shares of stock, Scott represented to McWilliams that said corporation had assets of the actual value of $70,000; that said representation was false.

3. That at the time of said agreement and at the time of the payment therefor McWilliams relied upon and believed such representation.

4. That but for such representation and his reliance thereon McWilliams would not have purchased said stock on the terms he purchased same.

5 and 6. Prior to the purchase of said stock Scott represented to McWilliams that the net surplus of said corporation was $30,000; and that said representation was false.

7 and 8. At the time of the agreement to purchase and the payment McWilliams relied upon and believed such representation to be true and but for such representation he would not have purchased said stock for the price paid therefor.

9 and 10. Prior to the agreement and purchase of the stock Scott represented to McWilliams that the corporation had produced and earned a net profit for the preceding year, that is, from August 1, 1930, to August 1, 1931, in the sum of $13,000, and that such representation was false.

11 and 12. At the time of agreeing to purchase, and at the time of payment, McWilliams relied on and believed such representation to be true, and but for such representations McWilliams would not have purchased the stock at the price he did purchase it.

13, 14, and 15. On October 9, 1931, Scott represented to McWilliams that the assets of the Camp Del Norte, Inc., had a value of $74,185.25; such representation was false and made with the intention to induce McWilliams to consummate the purchase of said shares of stock.

16. At the time of making such representation Scott was not actually of the opinion that the assets of said camp were of the value of $74,085.25.

Numbers 17 and 18 not answered.

19, 20, 21, 22, and 23. On October 9, 1931, Scott represented to McWilliams that the net earnings of said corporation from August 1, 1930, to August 1, 1931, were $13,938.35; that such representation was false and was made to induce McWilliams to buy the shares of stock; that McWilliams believed and relied upon such representation at the several times he paid for the stock, and but for such representation he would not have purchased said stock.

Nos. 24 to 27. On October 9, 1931, Scott represented to McWilliams that Camp Del

Norte, Inc., had a surplus of $32,150.09; that same was false; that McWilliams relied on and believed such representation, and but for such representation he would not have bought the stock on the terms he did.

28. The reasonable value of the stock in question on the 12th day of January, 1932, was $8,537.11.

On the return of the verdict the court entered judgment for plaintiff, McWilliams, rescinding the sale of the stock of both corporations and in favor of plaintiff for the return of the purchase price.

Defendant Scott's motion for a new trial was overruled, and he prosecutes this appeal.

### Opinion.

The court overruled appellant Scott's general demurrer and special exception to appellee McWilliams' petition, and appellant complains of the court's rulings.

Appellee's petition alleged, as more fully stated thereafter, that on the ——— day of August, 1931, appellant verbally represented to appellee, as in the special issues submitted, that said corporation had assets of the actual value of $70,000; that the net surplus of said corporation was $30,000, and that the corporation had produced and earned for the preceding year a net profit of $13,000; that on October 9, 1931, appellee requested appellant to submit to him a written statement concerning the financial condition of said corporation and that appellant, in writing, represented to appellee, as more fully stated in the findings, that the corporation had assets totaling $74,185.25; that the corporation had a surplus of $32,150.09, and had earned a net profit for one year beginning August 1, 1930, of $13,938.35.

The special exception is directed to the first group of alleged false representations, that is, the verbal representations as to the value of the assets, the net surplus, and the net profit, the grounds of exception being:

(a) That "it does not appear wherein said representations, or any of them, were false."

(b) "Because there is no allegation as to wherein either of said representations was false."

Appellant in his brief enlarges upon his special exception possibly as applying to the general demurrer, and complains that there were no allegations as to the actual values alleged as to the assets, or what their values were, or that their values were less than represented, or that the difference between the represented values and the actual values was material. These matters are not pointed out in the special exception and apply only to the general demurrer.

■The petition, we think, sufficiently alleges the representations made, both verbal and in writing, the times when made, and made during the conference for the sale of the stock, made to inform plaintiff of the financial condition of the stock and its value, its assets and liabilities, its earnings for the previous year, plaintiff's reliance thereon in making the payment, that all representations were material, were the inducing causes of plaintiff making the purchase, plaintiff's reliance on the representations believing them to be true and was thereby induced to purchase, and would not otherwise have purchased but for said representations, that the stock would have been of the value represented ($13,000) had the representations been true, that due to the falsity of the representations the actual value of the stock did not exceed $5,000, plaintiff's want of familiarity with the matters about which the representations were made and his reliance at all times exclusively upon the representations. The petition alleges that the verbal and written representations were false and untrue and so known to appellant at the times he made them; that appellee did not know of the falsity of the representations until August, 1932, at which time he demanded a cancellation of the sale and tendered and now tenders into court the certificates of stock, and asks judgment for $13,000, with interest.

■ The rule is well established that in order for appellant to maintain this action for cancellation of the sale of the certificates of stock and return of the purchase price, on the ground of fraud and deceit, it was necessary to show by pleading and proof that appellant made representations as to the certificates of stock; that such representations were material facts; that the representations were untrue at the time made and the falsity of the representations were known to appellant to be untrue; that they were made with the intent and design of deceiving appellee and inducing him to enter into the contract; that appellee in fact relied upon such representations and was induced thereby to buy the stock and but for which he would not have done so; and that he was thereby damaged.

Tested by the above rule, we think the petition was not subject to the general demurrer, or special exception on the ground stated. Avery Co. of Texas v. Harrison Company (Tex. Com. App.) 267 S. W. 254; C., T. & M. C. Railway Co. v. Titterington, 84 Tex. 218, 223, 19 S. W. 472, 31 Am. St. Rep. 39; Baines v. Mensing Bros. & Co., 75 Tex. 200, 12 S. W. 984; Burchill v. Hermsmeyer (Tex. Civ. App.) 212 S. W. 767; 12 R. C. L. 240; 26 C. J. 1062; 20 Tex. Jur. p. 140, § 93, and cases in note.

■ Appellant complains that the court, over objection, permitted evidence of a financial statement of appellant corporation for the period beginning January 1, 1931, and ending December 31, 1931. The ground of

objection is to the effect that the representations complained of as untrue covered the period from August 1, 1930, to August 1, 1931, the statement thus covering a period of some five months not covered by the representations pleaded.

The statement is lengthy and we think it would serve no useful purpose to copy it here. Appellant, in his brief, in commenting on the facts shown by the statement, says: "As a matter of fact, the statement covering a period beginning December 31, 1930, and ending December 31, 1931, showed a gross profit for the twelve months of $17,836.52, and a net income for the twelve months of $2,805.01."

We accept the comment as showing the gross and net income of the admitted statement.

There was also introduced in evidence without objection a financial statement of appellant as to the same items covering the period from August 1, 1930, to August 1, 1931. Without copying the statement the balance sheet of that statement shows total assets of $61,287.59; surplus $16,557.11; net profit $7,828.05.

While a tentative agreement as to the amount to be paid for the stock had been reached, the sum had not been paid, and we have not found in the record a stated date when and on which it was agreed the consideration was to be paid. The stock had not been delivered and all of the $13,000 was paid after the written statement was made. The first statement was verbal, the second, the statement objected to, was the written statement of date October 9, 1931, and made pending the execution of the contract and before it was finally consummated and made in response to a request by McWilliams while in New York for such financial statement. The request for the statement, as shown by the record, was made by letter of date October 5, 1931. We do not find the letter in the record. Its substance was stated by McWilliams as follows: "I asked him in the letter to give me a statement of the condition of the camp as of approximately that date, or as near thereto as possible, and also the earnings for the past year."

The reply, inclosing the financial statement, was of date October 9, 1931. In the body of the statement occur these words: "Condensed statement of earnings of Camp del Norte, August 1st, 1930, to Aug. 1st, 1931."

As to said statements, verbal and written, the petition alleges: "That the verbal representations made by defendant to the plaintiff in August, 1931, as above alleged, and the written representations made by defendant to the plaintiff in the letter of October 9th, 1931, as above alleged, were false and untrue," etc.

It is true, as suggested by appellant, that while the letter called for a statement "approximately of that date," October 5, 1931, the report as to "the condensed statement of the earnings" of appellant given apparently covered the period from August, 1930, to August, 1931.

On the trial all of the statement was gone into very thoroughly by both appellant and appellee. Both McWilliams and Scott testified as to it, as also did the auditor who made one of the reports. The auditor also on examination by appellant identified the books used to make up the various statements and testified that "each and every item listed there is on those books there," and "correctly taken off."

The financial statement had been so thoroughly gone over by both parties, and the auditor with the books from which the several reports were made, being in court and compared by the auditor, we think it was not error to admit the statement, it being and containing but transcribed items testified to as shown by the books themselves.

The record shows that from and after the statement of October 9, 1931, appellant commenced to call upon appellee to make payments on the purchase price of the stock, and which was done at times during several weeks next thereafter.

■ By several propositions appellant submits that appellee having pleaded and the evidence having shown that the agreement as to the sale and purchase of the stock was definitely made in August, 1931, and the petition pleaded and the evidence showed that the representation made as to the actual value of the assets of the corporation were made prior to such agreement, it was error to submit, over objection, the first special issue as to the representation of appellant that the actual value of the assets was $70,000; that likewise it was error to submit the fifth special issue, referring to the representation made as to net surplus of $30,000; likewise it was error to submit the ninth special issue inquiring whether appellant had made the representation of an earned net profit of $13,000 between the dates stated.

The several assigned errors are based on the insufficiency of the pleading to justify the submission of the issues indicated.

We have heretofore discussed the sufficiency of the pleading and stated it at length in considering the general and special exceptions, and in considering these propositions we refer to the statement of the petition there made. The propositions are overruled.

No question is made as to the sufficiency of the evidence to sustain the several findings of the jury and the judgment of the court.

The case is affirmed.

### On Motion for Rehearing.

From appellant's motion for rehearing appellant seems to interpret our opinion as

saying that appellant's books covering the period from August 1, 1931, to December 31, 1931, were introduced in evidence on the trial. The fact is the books themselves were not introduced in evidence and we did not mean to say they were, and we think the words we used in the opinion would not admit such construction. The record shows that Mr. A. E. Pye, the accountant who made the statements used on the trial, was testifying as a witness. As a part of a very extended examination the following questions were asked him and answers given:

"Q. Mr. Pye, examine these books here that Mr. Scott has produced in court and state whether or not these are the books you made these statements from, look at them and see. A. They are.

"Q. These books that they have produced here are the books that you used to make up these various statements? A. Yes.

"Q. And you state to the jury that these statements you have submitted, each and every item listed there is on those books there? A. Yes.

"Q. Correctly taken off? A. Yes, sir."

Now, the witness Pye, in his answers, did not use the verbiage of the question. By an unqualified affirmative or negative answer to a question the witness necessarily adopts the verbiage of the question. From the above questions and answers of the witness we understand, as stated in the opinion, that the books, from which the statements were made, were actually in the presence of the witness while testifying; that he identified the books as those from which he made the statements; that in making the statement the items listed were on the books and correctly taken off. We think we were justified in saying that the items in the statement were but transcribed items from the books, as shown by the books from which the witness apparently was testifying and comparing with the statement.

We perhaps were not clear in our discussion as to the admissibility of the financial statement of the 9th of October, over objection that it covered a period of time not covered by the representations pleaded.

We think the statement was admissible.

The record shows that the agreed consideration of $13,000 was to be paid, conditioned that McWilliams could raise the money on his trip to New York. That shortly after the agreement was made in August, 1931, McWilliams went to New York, and on October 5th wrote to Scott from New York asking for a financial statement of the property in question and the earnings for the past year. In reply Scott, on October 9, 1931, sent to McWilliams in New York the statement in question.

It is essential to the maintenance of the action in deceit that McWilliams had the right to rely upon the representations upon which he acted in consummating the contract. As suggested by Scott, the stock sale contract had been made in August, 1931, yet the money had not been paid, nor the stock delivered; the contract was at that time executory. We regard the representation made in the statement of October 9th as a continuing one, upon which McWilliams might rely if he so regarded it. The statement then became a matter of evidence, a matter for the consideration of the jury and the weight to be given it.

The motion is overruled.