BELL v. HENSON.
No. 1487.

Court of Civil Appeals of Texas. Waco.
July 12, 1934.

Rehearing Denied Sept. 20, 1934.

McEntire, James & Clower and Ernest S. Goens, all of Tyler, for appellant.

Troy Smith, of Tyler, for appellee.

ALEXANDER, Justice.

R. L. Henson, for a consideration of $1,600 in cash, conveyed to Leo Bell an undivided three-fourths interest in the minerals or oil royalties in 54.2 acres of land in Smith county. He later brought this suit against Bell to cancel said conveyance and for damages, alleging that he had been induced to execute said conveyance as the result of fraud perpetrated on him by the defendant Bell. He alleged in effect that he resided in the state of Kansas and was wholly unfamiliar with oil developments and the value of mineral rights in Smith county where the land in question was situated; that the defendant Bell, who resided in Smith county and was engaged in the business of buying and selling oil royalties, was familiar with oil developments and the value of such mineral rights in that vicinity; that the said Bell visited the plaintiff at his home in Kansas and fraudulently misrepresented the value of said mineral rights; and that as a result the plaintiff was induced to execute said conveyance. The plaintiff alleged that prior to the filing of this suit Bell had conveyed one-fourth of the minerals in said land to good-faith purchasers. He sought to cancel the conveyance so made by him to Bell in so far as it applied to the one-half of said minerals still owned by Bell and to recover damages for the one-fourth of said minerals theretofore conveyed by Bell to good-faith purchasers. In his pleadings he offered to return such part of the consideration received by him as should be found to be equitable and proper. The case was submitted to the jury on the following special issues, which issues were answered by the jury as follows:

"Question No. 1. Do you find from a preponderance of the evidence that the statements and representations made by defendant to plaintiff, at the time the royalty deed was made by plaintiff to defendant, in question, as to the value of the royalty at the time, were made as a fact, and not as mere opinion, to induce plaintiff to make the sale to defendant?" Answer, "Yes."

"Question No. 2. Do you find from the preponderance of the evidence that the statements and representations of the defendant to plaintiff, made at the time of the sale of the royalty by plaintiff to defendant, were, under all the facts and conditions existing at the time, false?" Answer, "Yes."

"Question No. 3. Do you find from a preponderance of the evidence that the plaintiff relied on and was induced by the statements and representations of defendant as to the value of said royalty at the time, to execute and deliver the royalty deed to defendant?" Answer, "Yes."

"Question No. 4. Do you find from a preponderance of the evidence that a reasonable man would have been justified at the time, and under all of the circumstances and situation of the parties at the time, in relying on the statements and representations of the defendant to the plaintiff as to the value of the royalty in question?" Answer, "No."

"Question No. 5. What do you find from the evidence was the fair and reasonable cash value, per acre, of the royalty in question, at the time, and under all of the conditions and circumstances, when the royalty deed was made by plaintiff to defendant? Answer in dollars." Answer, "$80.00 per acre."

The court entered judgment for plaintiff for title and possession of an undivided one-half interest in the minerals in said land. It was further adjudged that the defendant Bell recover from the plaintiff Henson the sum of $516; it being recited in the judgment that this sum was the difference between the value of the one-fourth of said minerals theretofore disposed of by Bell and the $1,600 paid by Bell to Henson for said original conveyance. Said sum of $516 was declared to be a lien on the mineral rights so recovered by Henson, and said lien was ordered foreclosed and the property sold in satisfaction thereof in the event Henson failed to pay said sum of money into the registry of the court on or before March 23, 1933. The defendant appealed.

The appellant contends that, in view of the jury's answer to special issue No. 4, the court had no right to enter judgment for the plaintiff.

Where it is sought to recover damages or to rescind a contract by reason of an alleged fraudulent representation, the false representation relied on must have been of such a nature and made under such circumstances that the injured party had a right to rely upon it. 20 Tex. Jur. 54; 26 C. J. 1141; 12 R. C. L. 359; Scott v. McWilliams (Tex. Civ. App.) 60 S.W.(2d) 491, par. 5. Whether or not the com-

plaining party had a right to rely on the alleged false representation ordinarily involves a question of fact to be determined by the jury. 20 Tex. Jur. 176; 26 C. J. 1144; 27 C. J. 76; 12 R. C. L. 449; J. M. Radford Grocery Co. v. Halper (Tex. Civ. App.) 274 S. W. 1023, par. 2. This is particularly true with reference to a representation as to the value of an article being bought or sold. 20 Tex. Jur. 72; 12 R. C. L. 381; 26 C. J. 1155. In the case at bar the court, by special issue No. 4, undertook to submit to the jury plaintiff's right to rely on the representations complained of. The jury found against the plaintiff on that issue. Notwithstanding such finding, the court entered judgment for the plaintiff. There was no attempt by plaintiff to comply with the provisions of Revised Statutes, art. 2211, as amended in 1931 (Acts 1931, c. 77, § 1 (Vernon's Ann. Civ. St. art. 2211), authorizing the entry of judgment non obstante veredicto. It is a well-settled rule in this state that, in the absence of a compliance with the provisions of the above statute, the trial court cannot disregard the findings of the jury on a material issue and enter judgment contrary thereto. 25 Tex. Jur. 497; Houston & T. C. Ry. Co. v. Strycharski, 92 Tex. 1, 37 S. W. 415; Henne & Meyer v. Moultrie, 97 Tex. 216, 77 S. W. 607; Heimer v. Yates (Tex. Com. App.) 210 S. W. 680; Fitch v. Lomox (Tex. Com. App.) 16 S.W.(2d) 530, 66 A. L. R. 758. Moreover there was evidence to support the issue, and it would have been improper for the court to have disregarded the jury's answer thereto even if there had been an attempt to comply with the provisions of the above-cited statute.

■■ We do not wish to be understood as holding that special issue No. 4 as submitted by the court was in proper form. Ordinarily the test for determining liability on this issue is not whether or not a reasonable man would have been justified in relying on the alleged false representations, but whether or not said representations were of such a nature and made under such circumstances that the complaining party had a right to rely thereon. 20 Tex. Jur. 54; 26 C. J. 1142; 12 R. C. L. 359; Kaiser v. Nummerdor, 120 Wis. 234, 97 N. W. 932, 934; Christensen v. Jauron (Iowa) 174 N. W. 499; Ingalls v. Miller, 121 Ind. 188, 22 N. E. 995; Oneal v. Weisman, 39 Tex. Civ. App. 592, 88 S. W. 290, par. 2; Jackson v. Stockbridge, 29 Tex. 394, 399, 94 Am. Dec. 290. However, notwithstanding the fact that the issue as submitted was improper in form, it was not so utterly defective as to be entirely immaterial and thereby authorize the court to ignore the same and to enter judgment con-

trary thereto. Harrell v. St. Louis & S. W. R. Co. (Tex. Com. App.) 222 S. W. 221; North v. Atlas Brick Co. (Tex. Com. App.) 13 S.W. (2d) 59, par. 3. This requires a reversal of the judgment of the trial court.

■ In view of another trial, we suggest that there were no pleadings authorizing the foreclosure of a lien in favor of Bell on the mineral rights recovered by Henson. In the event Henson is allowed to rescind the contract and to recover a part of the minerals so conveyed by him to Bell, it naturally follows that Bell should be compensated for the difference between the consideration paid by him to Henson and the value of the mineral interest retained by him, but the judgment should require Henson to pay said amount to Bell, or into the registry of the court for him, on or before a fixed date, as a condition precedent to the right to enforce the judgment recovered by Henson, instead of awarding Bell a lien on said mineral rights and forcing him to resort to legal process in order to collect same. Fitzhugh v. Franco-Texas Land Co., 81 Tex. 306, 16 S. W. 1078; Southern Oil Co. v. Wilson, 22 Tex. Civ. App. 534, 56 S. W. 429.

On account of the above errors, the judgment of the trial court is reversed and the cause remanded for a new trial.

STANFORD, Justice (dissenting).

Not being able to agree with my associates, I hereby file the following dissenting opinion:

This suit was brought by appellee, R. L. Henson, against appellant, Leo Bell, for the purpose of canceling a mineral deed conveying one-half of the minerals in 54.2 acres of land situated in the west edge of the East Texas oil field in Smith county.

As grounds for the cancellation of said mineral deed, appellee alleged that he was induced to execute said mineral deed by the fraudulent representations of appellant. The substance of the fraud charged is as follows: That appellee lived in the town of Salina, Kan., where he had been residing for a number of years. That he (appellee) was wholly unfamiliar with the conditions existing in the vicinity of the land in question at the time of the execution of the mineral deed, and did not know how far the land was from production. That appellant resided in Smith county and was thoroughly familiar with the mineral developments in the vicinity of said land and was acquainted with the values of royalties in said locality and particularly of the value of the royalty in question. That on or about the 21st day of April, 1931, appellant came to

Salina, Kan., and represented to appellee that he was acquainted with the value of said minerals, and that appellant, with fraudulent intent, represented to appellee, that said land was a considerable distance from the actual production of oil and gas, but that said land had a speculative value at that time. That appellant would pay appellee all said land was worth at said time, and represented to appellee that an undivided three-fourths interest in the minerals under said tract of land was worth $1,600. Pursuant to, and as a result of, said representations, a mineral deed to three-fourths of the minerals under said land was executed for a consideration of $1,600.

## Opinion.

The evidence in the case shows that the land in question was situated approximately two and one-half miles from the Guy Lewis oil well, which was the closest oil well at that time to the land. There were no wells at that time south or west of this tract of land, and it was unproven and what was commonly known as being in "wildcat" territory. It was further undisputed on the trial that the royalty under this particular tract of land, at the time of the execution of the deed in question, had only a speculative value.

Some eight or ten witnesses testified in the case, and about half of said witnesses testified that from $25 to $50 per acre they thought would be a fair price for said land, and about the same number of witnesses testified, in effect, that they thought the royalty was worth from $150 to $200 per acre. All of them testified, in substance, that they did not know what said royalty was worth, and that there was no method by which it could be determined until the land was fully developed, but all of them testified that the royalty had only a speculative value and that it was practically two and one-half miles from production.

I think that in this case there was no fraud shown. The land being in an undeveloped, unproven, and wildcat territory, and its value depending upon future developments as to whether the land had a value or was worthless, representations as to its value, I think, could be nothing more than the expression of an opinion. There is no contention in this case that the royalty in question had an established market value; that it was of a purely speculative and doubtful value; that it was worth whatever one could get for it. As stated above, the 54 acres involved here, being located some two miles south and southwest of the nearest producing well, and there being no new development in that direction at that time, no one could know whether or not there would ever be any development on appellee's 54 acres; and, if a well was drilled on appellee's 54 acres, no one could know whether the result would be an oil well or a dry hole. Appellant repeatedly stated that he did not know what the result would be. In fact, he could not know except by drilling or by having said 54 acres drilled. Appellant took a chance by having said land drilled. If it had resulted in a dry hole, appellant's $1,600 would have been lost. Drilling for oil, it is thought, is generally a very risky business, and probably results in about as many dry holes as it does in oil wells. The conversation between appellee and appellant as to appellant's being a white man was unimportant, and could mean nothing except possibly that appellant claimed to be an honest man. No one ever stated as a fact that there was oil under said land prior to the time it was drilled. Appellant and many others stated that they thought there was oil under said land. This is as far as any one did or could go until after said land was actually drilled. Conditions must be considered as they were on the 21st day of April, 1931, the time said 54 acres were purchased.

The record shows that Mr. Henson sold to the Sun Oil Company a lease of the 54 acres on the 30th of March, 1931. That was before Mr. Henson sold the royalty to Mr. Bell. The Sun Oil Company paid $2,000 for this lease.

Appellee contends, in effect, that he did not know for sure that he had any land in Smith county, and that he had examined the records to determine if he did have any land in Smith county. The record shows that appellee knew more than he admitted he knew, for on March 30, 1931, he (Henson) sold to the Sun Oil Company the lease on said 54 acres involved herein for $2,000 cash. The royalty involved herein and sold to Leo Bell for $1,600 was not sold until the 21st of April, 1931, twenty-one days after the sale to Leo Bell of the three-fourths of said royalty. During this twenty-one days, the Sun Oil Company and Mr. Henson evidently had plenty of time to ascertain that Mr. Henson did own said land and such title as the Sun Oil Company was willing to pay and did pay $2,000 for a lease thereon. Henson's contention of his doubts as to his having said land was evidently feigned and only a pretense. He received $2,000 for the lease of the 54 acres March 30, 1931, and $1,600 for three-fourths of the royalty on said 54 acres on April 21, 1931. Evidently, I think, Henson had no right to complain. There is no evidence that he was overreached or deceived by Leo Bell. In the trial

of this case the jury found that the 54 acres of oil land involved was of the value of $4,320. However, the jury could not know what it was worth and could only make an estimate. The Sun Company fixed the value of the lease as $2,000, and the value of the three-fourths of the royalty was fixed by Mr. Bell at $1,600, making a total of $3,600. So their estimate was not very much different from the value as found by the jury. Samuel B. Gordon v. John G. Butler, 105 U. S. 553, 26 L. Ed. 1166; 12 R. C. L. p. 244, also p. 381, § 32; Patterson v. Bushong (Tex. Civ. App.) 196 S. W. 962; Sawyer v. Prickett, 19 Wall. (86 U. S.) 146, 22 L. Ed. 105; Holbrook v. Connor, 60 Me. 578, 11 Am. Rep. 212.

I will discuss briefly special issues 3 and 4:

"Question No. 3. Do you find from a preponderance of the evidence that the plaintiff relied on and was induced by the statements and representations of defendant as to the value of said royalty at the time, to execute and deliver the royalty deed to defendant?" Answer, "Yes."

"Question No. 4. Do you find from a preponderance of the evidence that a reasonable man would have been justified at the time, * * * in relying on the statements and representations of the defendant to the plaintiff as to the value of the royalty in question?" Answer, "No."

The third and fourth issues, if both had been submitted and both had been answered in the affirmative, would have covered said third and fourth issues fully and completely, and said answers would have been in harmony with all the others; but, the fourth issue having been answered in the negative, said issues 3 and 4 as answered are, in effect, necessarily contradictory of each other, and so neither issue can support a judgment in this case. The fourth special issue was a proper and controlling issue in this case under the pleading and evidence, and, having been submitted to the jury and answered in appellant's favor, should have been considered by the court in the rendition of the judgment. Although same was answered by the jury favorably to appellant, same appears not to have been considered by the court in the rendition of judgment. Said fourth issue was correct, and in effect submitted what a reasonable man would have been justified at the time in relying on the statements and representations of the defendant to the plaintiff as to the value of the royalty in question. It was affirmative and reversible error in this case for the trial court to ignore the answer to the fourth special issue in the rendition of judgment herein. The answer to the fourth issue was just as important as the answer to the third special issue, and neither of these issues could be ignored. At least it was reversible error to ignore the fourth special issue. As the findings of the jury on said issues Nos. 3 and 4 were important issues and did not tend to show fraud, effect should have been given to the same in the rendition of the judgment, and it was reversible error on the part of the court to fail to do so. I think also the evidence fails to support the judgment, in that it failed to show any fraud.

For the errors above pointed out, the case should be reversed and rendered.