## WILLIAMSON v. PATTERSON.

### No. 1656.

Court of Civil Appeals of Texas. Eastland.

April 9, 1937.

Rehearing Denied May 7, 1937.

W. L. Coley, of Fort Worth, and F. D Wright, of Cisco, for appellant.

Hurst, Leak & Burke, of Longview, for appellee.

GRISSOM, Justice.

In June and July, 1931, the appellee, Mrs. Patterson, owned a one-tenth royalty interest in 320 acres of land in Gregg county, Tex., and W. M. Pollock owned an equal interest therein. Mrs. Patterson and Pollock resided at Mansfield, La. At said time R. C. Williamson, a resident of Fort Worth, Tex., was the owner of bonds of the face value of $8,000 issued by the Masonic Temple Building Association of Oklahoma City, Okl. They were second mortgage bonds providing for the payment of 6 per cent. interest per annum, payable on the first days of July and January of each year, secured by a second lien on the Masonic Temple building in Oklahoma City. In August, 1931, a trade

was consummated whereby Mrs. Patterson exchanged her royalty interest for Williamson's bonds.

After the exchange the Building Association failed to pay to Mrs. Patterson the interest payments that thereafter became due on the bonds. Early in the year 1932 she was advised in substance that it was probably in failing condition. At the time of the exchange the tract of land in question had not been developed for oil and the value of the royalty interest was speculative. Mrs. Patterson paid $3,200 for her royalty interest. Williamson paid $8,000 for the bonds. Thereafter wells were drilled upon said land and at the time of the filing of this suit plaintiff alleged that there were eleven or more producing oil wells upon said tract. Mrs. Patterson continued to attempt to collect the interest payments upon her bonds until in January, 1934, when suit was filed. She sought cancellation of the conveyance by her to Williamson; she tendered back the bonds and asked for an accounting as to the money received by Williamson as the result of his ownership of the royalty.

The jury found: (1) That Earles represented to Pollock that the bonds of the building association were gilt-edged; (2) that by the term "gilt-edged" was meant well secured and worth par value; (3) that such representation was false; (4) that such representation was a material inducement to Mrs. Patterson to make the exchange; (5) that Mrs. Patterson relied upon said representation; (6) that Earles represented to Pollock that the interest coupons attached to the bonds were being and had been paid upon the respective due dates thereof; (7) that such representations were false; (8) that they were a material inducement to Mrs. Patterson to make the exchange; (9) that Mrs. Patterson relied upon the representations in making the exchange; (10) that Mrs. Patterson would not have made the exchange but for an (independent) investigation made by Pollock. The court found from the undisputed evidence that Williamson had received in money, as income from his one-tenth royalty interest, the sum of $2,464.12; that the royalty payments due on Williamson's interest had not been paid to him since the 25th day of January, 1934, but that such income had been retained by the pipe line company receiving the oil from said property.

The court rendered judgment for Mrs. Patterson for the sum of $2,464.12, adjudged that the moneys now held by the purchasers of the oil belonged to her, and further decreed that the bonds tendered by Mrs. Patterson into court be delivered to Williamson. It was decreed that the royalty deed be canceled.

The plaintiff, Mrs. Patterson, pleaded that in the negotiations for the exchange of the bonds for her royalty interest that Williamson was represented by Earles as his agent; that she was represented in said transaction by her agent Pollock; that Earles represented to Pollock "that said bonds were gilt-edged (meaning thereby that same were well secured and worth par value), and that the interest coupons attached to said bonds were being and had been paid upon the respective due dates of such interest coupons, and that such interest coupons were not in default." She alleged further that the interest coupons due prior to the 22d day of August, 1931 (the date of the consummation of the trade) had been clipped or cut from said bonds at the time said bonds were accepted by her; that the interest coupons due on July 1, 1931, had not been paid and were in default; "that said bonds were and are second mortgage bonds and that the defendant and his agent, ——— Earles, failed to advise this plaintiff, or her representative, W. M. Pollock, that such bonds were second mortgage bonds." Mrs. Patterson alleged the falsity of the representations by Earles and that she believed and relied thereon and was thereby induced to make the exchange. It should be noticed that plaintiff did not allege that the bonds were falsely represented as being first mortgage bonds. The allegation is that defendant "failed to advise" plaintiff that they were second mortgage bonds. Our attention has not been directed to facts which made it the duty of defendant to so expressly advise the plaintiff. See McKinney v. Fort, 10 Tex. 220, 232. However, this question is not presented for decision.

The defendant answered by a plea to the jurisdiction, general demurrer, general denial, and a plea of laches. He specially denied that Earles was his agent or had any authority to make the representations alleged and alleged that he had never known until the filing of this suit that the plaintiff or any one else claimed that

such representations had been made or that Earles was acting as his agent in making such representations.

The plaintiff depended chiefly upon the testimony of Pollock, which testimony was supported to some extent by the witness Yarbrough, to sustain the allegations as to the representations made by Earles. The testimony of said witnesses was sufficient to authorize the jury in finding that Earles did make the representations substantially as alleged. However, Pollock's testimony is to the effect that Earles' representations were made to him in June or July, 1931. If they were made before the 1st day of July, 1931, then it is undisputed that at such time there had been no default in the payment of the interest due on the bonds. However, at the time of the consummation of the trade there had been a default in the payment of interest on the bonds to the amount of $240. Mr. Pollock is an attorney, but at the time he acted as the agent of Mrs. Patterson he was doing so only as a friend. Bonds aggregating the sum of $5,000 were deposited in a Longview bank pending the consummation of the trade two or three weeks before its consummation, and the remaining $3,000 were deposited in said bank by Williamson shortly before the closing of the deal. Pollock testified that he only looked at the bonds for the purpose of ascertaining whether or not they were "guaranteed bonds." At this time he was acting as Mrs. Patterson's agent. It is almost inconceivable that any one could have made any examination of the bonds and failed to have discovered that they were second mortgage bonds. On the face of the bonds, at the top thereof, they are in bold type designated as second mortgage bonds. Thereafter in the face of the bonds there are at least five references to the fact that they are second mortgage bonds, or that they are secured by a second mortgage deed of trust. The interest coupons attached to the bonds recite that they are for interest due on second mortgage bonds. On the back of the bonds in very bold type they are declared to be second mortgage bonds.

■■ The testimony is certainly not conclusive to the effect that Earles was the agent of Williamson with authority to make the representations he is charged to have made. Other than the testimony of plaintiff's witnesses that Earles declared himself to be Williamson's agent, the testimony is to the effect that Earles never had the bonds in his possession and that his only authority was to attempt to find some person who might be interested in purchasing or trading for the bonds and having an offer made by them submitted to Williamson or his agent, Wilson, for their consideration. There was no finding by the jury that Earles was so authorized to act. The question was not submitted to the jury. The authority of Earles was made an issue by the pleadings and evidence. Before Wiliamson could be bound by the false representations charged to Earles, it was necessary for plaintiff to establish the authority of Earles to make such representations. 2 Tex.Jur. § 103, p. 499 et seq. The burden being on the plaintiff, it was her duty to see that the issue was submitted to the jury. The court did not submit the issue and plaintiff did not request its submission. Under such situation plaintiff's right of recovery thereon was waived. Dallas Hotel Co. v. Davison (Tex.Com.App.) 23 S.W.(2d) 708; Ormsby v. Ratcliffe, 117 Tex. 242, 1 S.W.(2d) 1084. Without a favorable finding thereon an essential element prerequisite to recovery by plaintiff was lacking and the facts found by the jury were insufficient as a basis for the judgment.

There is no conclusive proof and no finding that Williamson knew of the representations alleged to have been made by Earles and that so knowing he accepted the benefits of the transaction. The evidence with reference thereto is that Williamson did not know until the filing of this suit that such claim was being made.

■■ However, the testimony of plaintiff's witnesses discloses that the false representations alleged to have been made by Earles, if they were made, were made to Pollock at the time that Earles was attempting to trade with Pollock for Pollock's royalty interest in the said land. Neither Earles nor Williamson at that time knew or had ever heard of Mrs. Patterson. Pollock testified that at said time "Mrs. Patterson was not known in it. * * * At that time I never thought about making a deal for Mrs. Patterson or even asking about it." Pollock, according to his testimony, after listening to the representations charged to Earles, stated that he would "see about it." He then learned that his

creditor would not accept the bonds on his (Pollock's) debt at face value, but would only accept them and give Pollock credit for what the creditor received on the bonds. Under such situation Pollock decided that he did not desire to exchange his royalty interest for the bonds. But he mentioned the offer that had been made to him to Mrs. Patterson, and inquired whether or not, since she owned an interest equal to his in the same tract of land, she was interested in making the exchange. Pollock testified that after he had told Mrs. Patterson of the offer to trade the bonds for his royalty he told Mrs. Patterson of the representations made to him by Earles. Thereafter he did not talk to Earles about the bonds. Pollock then, for Mrs. Patterson, made an independent investigation as to the value and standing of the bonds and was advised by a friend of his in Oklahoma City that the bonds were considered good locally, and the interest payments were regularly made. Pollock further testified that he thought (no one so representing to him either individually or as agent for Mrs. Patterson) that these bonds were the obligation of the entire Masonic Order. Having confidence in said order and having received said information from his friend in Oklahoma City, he advised Mrs. Patterson to make the trade. Apparently neither Earles, Wilson, nor Williamson knew Mrs. Patterson or of her connection with the proposed exchange until Pollock arrived in Longview with her deed shortly before the trade was consummated. Pollock became Mrs. Patterson's agent after the alleged representations were made by Earles to Pollock. Regardless of the other questions presented and mentioned, we think the plaintiff cannot recover unless the representations were made to Mrs. Patterson, or were intended for her, or for some person of which she was a class. Plaintiff's evidence discloses that neither Williamson nor Earles, at the time the representations were made, knew of Mrs. Patterson. At that time Earles was attempting to induce Pollock to trade his interest in the royalty for said bonds, and the exchange of Mrs. Patterson's interest, or the interest of any person (other than Pollock's) in the royalty for the bonds was neither discussed nor contemplated by either Earles or Pollock.

"A person making a representation is only accountable for its truth or honesty to the very person or persons whom he seeks to influence; no one else has a right to rely on the representations and to allege its falsity as a wrong to him." Cooley on Torts (2d Ed.) p. 493. In Texas & N. O. Ry. Co. v. Webster, 53 S.W.(2d) 656, 657, 662, the Court of Civil Appeals at El Paso, in an opinion by Justice Walthall, said: "It seems to be settled law that, if a false statement be made to one person to induce him to act, the balance of the world has no legal right to rely on it." The case was affirmed by our Supreme Court without discussion of this proposition in 123 Tex. 197, 70 S.W.(2d) 394. Also see 20 Tex.Jur. § 67, p. 103; Gainesville Nat. Bank v. Bamberger, 77 Tex. 48, 53, 13 S.W. 959, 19 Am.St.Rep. 738; Bell v. Henson (Tex.Civ.App.) 74 S.W.(2d) 455; 27 C.J. § 116, p. 4; 26 C.J. § 74, p. 1162; 12 R.C.L. § 117, p. 363 et seq.; Black on Rescission & Cancellation, § 95, p. 244; Pomeroy on Equity Juris.(2d Ed.) § 879.

The plaintiff (1) failed to establish conclusively, or obtain a finding by the jury of, the authority of Earles to make the representations charged to him, or to show Williamson's knowledge of his representations. (2) Plaintiff proved that the representations made by Earles were made to Pollock to induce Pollock to trade his royalty for the bonds; that at such time Pollock was acting for himself and not as Mrs. Patterson's agent. Mrs. Patterson was then unknown to Earles. If it be assumed in this connection that at such times Earles was Williamson's agent duly authorized to make the representations charged to him, it nevertheless results (since plaintiff's evidence excludes any idea that Earles' allegedly false representations were made to Mrs. Patterson, or intended to be conveyed to her) that Mrs. Patterson had no legal right to rely thereon.

Under these circumstances we think the court should have sustained defendant's motion for an instructed verdict. Here plaintiff not only failed to make out a case, but by the evidence last referred to proved that she did not have one.

The judgment is reversed, and judgment here rendered for defendant.